**Barbara L. BRAINARD,
Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant–Appellee.**

**No. 88–1844.**

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1989.

Aug. 7, 1989.

Barbara L. Brainard, Kalamazoo, Mich., for plaintiff-appellant.

---

**15.** See generally *Clifton,* 526 S.W.2d at 602 (reliance on silence may be justified if the silent party has a "duty to speak").

Michael L. Shiparski, Asst. U.S. Atty., Grand Rapids, Mich., Donna Morros Weinstein, Chief Counsel, Robert Hanson, Stuart K. Jones, Dept. of Health and Human Services, Office of the General Counsel, Region V, Chicago, Ill., for defendant-appellee.

Before KENNEDY, JONES and WELLFORD, Circuit Judges.

PER CURIAM.

Plaintiff, Barbara L. Brainard, appeals from the district court's order granting summary judgment for the Secretary of Health and Human Services (Secretary). For the following reasons, we affirm.

## I.

On February 26, 1985, Brainard filed an application for disability insurance benefits (DIB) and for supplemental security income (SSI). Her SSI application was granted but her DIB claim was denied initially and on reconsideration. Her DIB claim was assigned to an administrative law judge (ALJ) who erroneously ruled that Brainard had enough quarters of credit to meet the "currently insured" requirements for DIB under Social Security Administration (SSA) regulations. When the error was discovered, the Appeals Council remanded Brainard's case back to the ALJ.

On May 15, 1986, a hearing was held before the ALJ. On July 2, 1986, the ALJ rejected Brainard's DIB application and the Appeals Council affirmed the ALJ's decision. Brainard then filed suit seeking review of the Secretary's decision. On June 17, 1988, the United States District Court for the Western District of Michigan entered summary judgment for the Secretary.

Brainard was born on June 18, 1939, and was 45 years old at the time she filed her first DIB application in 1985. She claims that she became disabled as of December 1969, at the age of 30, because of bronchial asthma and mental illnesses. At the administrative hearing, the ALJ ruled that for Brainard to be eligible for DIB, she must both be fully insured and have a special disability insured status. In order to be fully insured, SSA regulations provide that Brainard must have worked for one quarter for each year after the year she turned 21 until the year in which the disability is claimed, *i.e.*, one quarter for each "elapsed year." 42 U.S.C. § 414(a) (1982); 20 C.F.R. §§ 404.110, 404.132 (1988). Thus, since Brainard turned 21 in 1960 and claims disability in December 1969, the ALJ determined that Brainard needed at least eight quarters of coverage to meet the fully insured status requirement. Because her earnings records from 1960 until 1985 proved that Brainard had more than eight quarters of coverage, the ALJ ruled that she was a fully insured individual.

With respect to the "currently insured" or special disability insured status requirements, the ALJ determined that Brainard, who claims disability as a younger individual (*i.e.*, before age 31), must have earned quarters of credit in at least half of the calendar quarters from the calendar quarter after she turned 21 (second quarter of 1960) until the quarter (*before* age 31) in which she claims disability (fourth quarter of 1969). *See* 42 U.S.C. § 423(c)(1)(B)(ii) (1982); 20 C.F.R. § 404.130(c) (1988). Thus, since the period in Brainard's case represents thirty-eight quarters, the ALJ concluded that Brainard would need nineteen quarters of coverage in order to be currently insured. SSA earnings records presented to the ALJ indicate that Brainard was credited with sixteen calender quarters of credit. While Brainard acknowledged that the SSA records correctly reflected that she had earned credits in sixteen quarters, she claims that she should have been credited with five additional quarters because she worked during five quarters which were not reflected in the SSA records. The ALJ rejected Brainard's claim relating to the additional five quarters, in part, because SSA regulations provide that the relevant date for the purpose of receiving quarters of credit is the quarter in which an employee was *paid* earnings rather than the quarter in which the claimant actually worked for those earnings. *See e.g.*, 20 C.F.R. §§ 404.140(b), 404.141(a) (1988).

Since Brainard has only sixteen documented quarters of coverage, the ALJ ruled that Brainard does not meet the additional special disability insured status requirements and that she is not entitled to DIB. Although the ALJ concluded that the SSA records were accurate, he kept Brainard's case open to allow her to supply documentary evidence to support her claim concerning the additional quarters. While Brainard's attorney at the hearing stated that she would attempt to provide written verification for the additional employment dates, Brainard never provided any additional documentary evidence.

## II.

Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. *Reynolds v. Secretary of Health and Human Services*, 707 F.2d 927 (6th Cir.1983). Finally, where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where the party seeking remand shows that the new evidence is material and that there was good cause for not presenting the evidence in a prior proceeding. 42 U.S.C. § 405(g) (1982); *Oliver v. Secretary of HHS*, 804 F.2d 964, 966 (6th Cir.1986).

■ Brainard's first argument is the SSA records do not adequately reflect her quarters of coverage and that her oral testimony should be viewed as "satisfactory" and substantial evidence. With respect to this claim, 20 C.F.R. § 404.803(a) (1988) provides that, in general, "SSA records are evidence of the amounts of ... earnings and the periods in which they were received." If a claimant challenges the SSA records within 3 years, 3 months and 15 days (the "time limit") after any year where there are reported earnings, the SSA records are not conclusive and the SSA is authorized to correct the earnings record. *Id.* at § 404.803(b). Since Brainard is challenging periods *outside* the time limit, the SSA "records are conclusive evidence that no wages were paid" in the disputed periods. While 20 C.F.R. § 404.822 (1988) provides exceptions to this rule, Brainard has not submitted W–2 forms, tax returns, affidavits from her prior employers or any satisfactory documentary evidence to prove that the SSA records are incorrect. Moreover, even if Brainard's oral testimony is viewed as "satisfactory" evidence, Brainard has failed to meet any of the listed exceptions provided in 20 C.F.R. § 404.822 (1988). Thus, we reject Brainard's first claim.

Brainard's second argument is that, in determining whether she has enough quarters of credit, the Secretary should "freeze" all quarters between June 1966 until July 1968 because she was disabled during that period as a result of a mental illness. Since eliminating those periods would also eliminate eight of the thirty-eight quarters, she would be required to show that she worked in half of thirty quarters (*i.e.*, fifteen quarters) in order to be currently insured. Since she has sixteen quarters, Brainard contends that she is currently insured.

■ Although the Secretary urges that we reject Brainard's second claim because it has not been raised previously, the record indicates that Brainard attempted to raise this issue to the ALJ. *See* J. App. at 49 (Brainard: "Aren't these frozen all these years I've been disabled?") Since her attorney at the hearing did not pursue this argument and the argument was not presented to the district court, it appears that the argument has been abandoned. *See, e.g., McMurphy v. Flushing*, 802 F.2d

191, 198–99 (6th Cir.1986) (an issue raised in a prior proceeding, yet not pursued on appeal, is deemed abandoned). However, even if we considered this claim, Brainard would be entitled to have the quarters discounted only if the Secretary had determined that she had a period of disability. *See* 20 C.F.R. § 404.110(c) (1988) ("In determining the number of elapsed years ... we do not count as an elapsed year any year which is wholly or partly in a period of disability *we established for you.*") (emphasis added). In addition, a period of disability is defined in 42 U.S.C. § 416(i)(2)(A) (1982) as "a continuous period ... during which an individual was under a disability" and section 416(i)(2)(B) provides that "[n]o such period of disability shall begin ... unless such individual files an application for disability determination with respect to such period." Because Brainard did not file an application for disability benefits with respect to the disputed two-year period and because the Secretary did not establish any period of disability for Brainard, the eight quarters should not be discounted. Thus, we also reject her second claim.

### III.

For the reasons discussed above, we accordingly AFFIRM the district court's order.