972 F.2d 347
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ralph FARHAT, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 91-1925.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1992.
 
 Before KENNEDY, DAVID A. NELSON and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Ralph Farhat appeals the district court's granting of summary judgment for the defendant, the Secretary of Health & Human Services (the Secretary), arguing that the Secretary's denial of disability benefits to him was erroneous. We affirm the district court's granting of summary judgment.
 
 
 2
 Claimant Ralph Farhat was 59 years old at the time of the Secretary's final decision in this case. From 1963-1971, he was a tavern owner; from 1971-72 he was a travelling salesman; and from 1972-82, he was district manager for the Michigan Lottery. As the result of an assault at work in 1970, Farhat received a cerebral concussion and brain edema. He began taking medication, including Dilantin, Mysoline and Phenobarbital.
 
 
 3
 Between 1975 and 1979, Farhat suffered several grand mal and petit mal seizures. In 1979, an examination by his treating physician, Dr. Posada, was normal. He suffered two more seizures in 1981 and 1982, and Dr. Posada's examination was again normal. After three more seizures, a brain scan uncovered a brain tumor. In June of 1982, he had surgery on a mass lesion in his brain. Farhat suffered two seizures in September 1982, and his medication was increased. He again suffered two more seizures before March of 1983. Dr. Posada then allowed Farhat to return to work with restrictions on driving, working at heights or working around moving machinery. An EEG on August 25, 1983, showed abnormal brain activity. However, Dr. Posada again indicated that plaintiff was not totally disabled and was only restricted as to driving, working around heights or around moving machinery.
 
 
 4
 After Dr. Posada retired in 1984, Dr. Fortino became Farhat's treating physician. Dr. Fortino referred Farhat to Dr. Ackerman, a neurologist, who reported four more seizures but indicated that Farhat denied headaches, weakness, or sensory loss. Dr. Ackerman's neurological exam was normal. He noted that Farhat should not drive. In 1985, Dr. Fortino reported that Farhat could not do his usual work, but that his general health was satisfactory. He noted that Farhat should avoid climbing and activities producing excessive fatigue. After three more seizures in 1985, Dr. Ackerman increased the medication levels. Farhat reported jitteriness and not feeling himself as a result of the medication. In December 1985, Dr. Fortino indicated to the Michigan disability insurer that plaintiff was not employable because his seizures were not under control.
 
 
 5
 Farhat had another seizure on February 13, 1986, and Dr. Ackerman again adjusted his medication. On March 14, 1986, Dr. Fortino indicated that plaintiff was still unemployable. In March of 1987, Dr. Fortino indicated that Farhat had not had seizures for several months, but there was a question whether he could return to work. He listed the potential side effects of the medications Farhat was taking, which included drowsiness, rashes, vertigo and vomiting. In June of 1988, Dr. Lopez, who was completing attending physician's statements for private disability insurance, reported that Farhat had another seizure in December of 1987 and experienced decreased mental alertness and lethargy from the medication. He noted that because Farhat had been seizure-free for six months, he could return to work, but restricted Farhat to jobs that did not require driving or alertness.
 
 
 6
 On April 30, 1986, Farhat filed an application for disability benefits.[1] The application was denied initially and on reconsideration. At the first hearing before an administrative law judge (ALJ), Farhat testified that he had been almost seizure-free since February of 1986, but that he must rest often because the medication makes him fatigued, unbalanced, and dizzy. He noted that he thought he could work if he could take breaks to rest. A vocational expert testified that there were 12,500 jobs that Farhat could perform in the Lower Peninsula of Michigan. The ALJ found that Farhat was not disabled because he had the residual functional capacity to perform sedentary, semi-skilled work, including clerical jobs cited by the vocational expert.
 
 
 7
 The Appeals Council on February 17, 1988, remanded the case to the ALJ to determine of whether in light of plaintiff's age--55--his skills were transferrable to the jobs cited by the vocational expert with a minimum vocational adjustment in terms of tools, work processes, work settings, or the industry. At his second hearing on August 10, 1988, Farhat stated that his testimony at the first hearing had been unrealistic, and said he could not even perform sedentary work because of the fatigue and irritability produced by the medication. He reiterated that the medication makes him sleepy, fatigued, irritable and confused. He testified that he needed to rest an hour in the morning and at least two hours in the afternoon. A vocational expert testified that Farhat's past work gave him transferrable administrative and clerical skills for sedentary semi-skilled jobs, with minimal adjustment. He testified that Farhat could perform work such as an order clerk, desk clerk, or timekeeping clerk. He cited 11,600 such jobs in the lower part of the Lower Peninsula, as well as 12,000 light jobs in that area.
 
 
 8
 The ALJ found that plaintiff could not perform his past work but could perform sedentary, clerical work with minimal adjustment. The ALJ found that Farhat's allegations of side-effects from the medication were not credible. The Appeals Council found that the plaintiff was not disabled and adopted the ALJ's findings and conclusions. It noted that the Secretary had met his burden of demonstrating that the claimant can perform jobs that exist in significant numbers in the national economy.
 
 
 9
 On January 22, 1991, Farhat filed a complaint in district court. The district court accepted the magistrate's report and recommendation and granted summary judgment for the Secretary. Farhat now appeals that decision, arguing that the Secretary's denial of benefits was not based on substantial evidence and that the ALJ ignored the evidence of the side-effects of the medication he was taking.
 
 
 10
 The Secretary's findings must be affirmed if supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence" means "less than a preponderance" of the evidence and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir.1989). We cannot reweigh the evidence or substitute our judgment for the ALJ's, even if substantial evidence supports the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc).
 
 
 11
 We note that we only may consider evidence as to how Farhat's claimed disability changed after March 8, 1984. Because the Secretary denied Farhat's initial application for disability benefits and because Farhat did not appeal that decision, we must accept the finding that on March 8, 1984, Farhat was not disabled. See supra note 1. Therefore, we are limited to considering whether Farhat's condition changed after that date so that he then became disabled.
 
 
 12
 We find that there is substantial evidence supporting the Secretary's denial of benefits to Farhat. In applying the test set out in 20 C.F.R. § 404.1520 (1991), the ALJ found for Farhat on three of the factors.[2] As to factor three, substantial evidence indicated that Farhat's infrequent seizures alone were not sufficient to qualify him as "disabled" under the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpt., P, App. 1, §§ 11.02, 11.03.
 
 
 13
 The only question, then, is whether Farhat could perform other work given his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520(f) (factor five). In deciding Farhat's ability to perform other work, the ALJ found that Farhat's testimony as to the medication's side effects was not credible. We must defer to the ALJ's credibility determinations because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.' " Duncan v. Secretary of HHS, 801 F.2d 847, 852 (6th Cir.1986) (quoting Kirk v. Secretary of HHS, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428 (1983)).
 
 
 14
 In addition, Farhat's allegations of the medication's side-effects must be supported by objective medical evidence. Cf. Duncan, 801 F.2d at 852 (allegations of pain must be supported by objective evidence); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984) (subjective complaints can be discredited if they are inconsistent with the record as a whole). There is no objective medical evidence supporting Farhat's allegations that the medicine makes him so drowsy and requires him to rest to such an extent that he is unable to work. Farhat's treating physicians only restricted Farhat from driving, climbing and doing activities producing excessive fatigue. Later, Dr. Fortino did conclude that Farhat was "not employable," but based this only on the statement that Farhat had been having seizures. The Secretary is not bound by a treating physician's conclusory statement, King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984), and the physician's finding must be supported by objective evidence. Farhat's medical records indicate that on one occasion after an increase in his medication, Farhat reported side-effects from the drugs, including feeling "jittery" and not himself. However, his treating physician did not indicate that this would restrict Farhat's ability to work. Although Dr. Fortino listed the potential side effects of the drugs in Farhat's records, this is not medical evidence that Farhat suffered from these same symptoms. Dr. Lopez, the physician completing forms for private disability insurance, did report side-effects from the drugs in 1988, but did not indicate that the effects made Farhat unemployable. Therefore, in light of the lack of objective medical evidence supporting Farhat's claims of side-effects, the ALJ's findings that Farhat is not disabled and can perform other work are supported by substantial evidence.
 
 
 15
 Accordingly, we AFFIRM the district court's granting of summary judgment for the Secretary regarding the Secretary's denial of disability benefits to Farhat.
 
 
 
 [1]
 Farhat had previously applied for disability benefits on October 27, 1983, alleging that since October 24, 1982, he had been unable to work because of seizures. The application was denied initially on December 22, 1983, and on reconsideration on March 8, 1984. Farhat did not seek review of the reconsideration. Therefore, this denial is final and binding, and not subject to review by this Court. See Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 849 n. 1 (6th Cir.1986). Thus, the finding that Farhat was not disabled as of March 8, 1984, is res judicata. Therefore, to qualify for disability benefits, Farhat has to prove that his condition changed after March 8, 1984, and that he became disabled after that date
 
 
 [2]
 These factors are: Farhat was not working, § 404.1520(b); Farhat had a severe impairment, § 404.1520(c); and Farhat could not perform past relevant work, § 404.1520(e)