991 F.2d 796
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Betty R. NORWOOD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-5293.
 United States Court of Appeals, Sixth Circuit.
 April 20, 1993.
 
 Before MERRITT, Chief Judge, NELSON, Circuit Judge, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a social security disability case. The claimant, Betty R. Norwood, appeals from a summary judgment upholding a decision in which the Secretary found an onset of disability only as of May 19, 1988, instead of a date some five years earlier. Because we conclude that the record provides support for denying benefits up to Mrs. Norwood's fiftieth birthday but not beyond that point, we shall remand the case for an award of benefits as of her fiftieth birthday.
 
 
 2
 * Mrs. Norwood underwent back surgery in 1980 and again in June of 1983. She returned to work after her first operation but quit in April of 1983, stating that back pain prevented her from working. Later that year, after the second operation, she applied for disability benefits as of April 1, 1983. The application was denied. A second application--the one that ultimately led to the judgment at issue here--was filed in April of 1986. Like the first application, it alleged a disability onset date of April 1, 1983.
 
 
 3
 Mrs. Norwood has long complained of chronic back and right lower extremity pain, despite an apparent lack of ongoing, objective neurological deficits. She had a normal bone scan and electromyogram in 1986, and a CT scan of her spine at that time showed only mild central canal stenosis at L3-L4 and degenerative disc disease at L4-L5, with no post-operative, recurrent disc herniation.
 
 
 4
 The record contains a number of residual functional capacity assessments; the assessments range from total disability to virtually no impairment at all. In 1984 and again in 1986, Dr. Crowder, a treating family practitioner, reported that the chance of Mrs. Norwood's back condition improving was nil. Dr. Crowder said that she was completely unable to work, especially at a job requiring her to stand. In October of 1984 Dr. Moore, a consulting orthopedic surgeon, concluded that Mrs. Norwood was able to perform a limited range of sedentary work, but noted that she would have difficulty with work that required pushing, pulling, bending, twisting, turning or lifting.
 
 
 5
 Mrs. Norwood told Dr. Crowder that she had injured her back again on April 3, 1986, and he referred her to Dr. Wiesman. On July 11, 1986, Dr. Wiesman interpreted x-rays taken at that time as showing various problems with her back. On September 4, 1986, however, Dr. Spengler, a consulting orthopedic specialist, performed a CT scan "which did not reveal significant pathological findings." Dr. Spengler did not believe she had "any significant pathological processes" and recommended that "she be directed to someone who has a very productive and proven track record of managing difficult patients from a behavioral modification perspective." Prior to the start of the treatment recommended by Dr. Spengler, a bone scan revealed no abnormalities. A Dr. Lisella reported a "[n]ormal electrodiagnostic study of right lower extremity demonstrating no evidence of radiculopathy or neuropathy."
 
 
 6
 Mrs. Norwood participated as an inpatient in a pain management program at the Middle Tennessee Back Care Center from November 9, 1986, to January 16, 1987. At the conclusion of the program a Dr. Halliday found Mrs. Norwood capable of meeting the physical demands of being a cashier (work classified by the Department of Labor as light work), but Dr. Halliday questioned her ability to tolerate work stress due to anxiety. Dr. Spengler reexamined Mrs. Norwood in March of 1988 and wrote that her limitations were primarily subjective, that there was no objective evidence of impairment, that she was embellishing her symptoms, and that she could work in nearly any capacity. A residual functional capacity assessment by Dr. Wiesman in May of 1988 found she could do sedentary to light work but only without bending, squatting, crawling or climbing. Finally, on May 19, 1988, Dr. Staley examined Mrs. Norwood and concluded that she could not even do sedentary work--which, in his opinion, had been the case since 1983.
 
 
 7
 After several remands by the Appeals Council, an administrative law judge determined that Mrs. Norwood had become disabled as of May 19, 1988, the date of the assessment by Dr. Staley. The ALJ found that prior to that date Mrs. Norwood had not been disabled because she could perform her past relevant work as a sewing machine operator. Finding that she had the residual functional capacity to perform sedentary work, the ALJ determined in the alternative that Rules 201.15 and 201.22 of the Medical-Vocational Guidelines (the Grid) found in 20 C.F.R. pt. 404, subpt. P, app. 2, tab. 1, directed a conclusion of "not disabled" for the same time period.
 
 
 8
 After the Appeals Council denied a request for review, Mrs. Norwood filed a timely complaint seeking judicial review of the Secretary's final decision. A magistrate judge recommended affirmance. After considering Mrs. Norwood's objections, the district court adopted the magistrate judge's report and recommendation and upheld the Secretary's decision as being supported by substantial evidence. This appeal followed.
 
 II
 
 9
 The standard of review that applies to social security disability determinations by the Secretary was described thus in Brainard v. Secretary of HHS, 889 F.2d 679 (6th Cir.1989):
 
 
 10
 "Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The scope of our review is limited to an examination of the record only. We do not review the evidence de novo, make credibility determinations nor weigh the evidence." Id. at 681 (citations omitted).
 
 
 11
 In denying Mrs. Norwood's application for benefits with respect to the period prior to May 19, 1988, the ALJ invoked the fourth step of the five-step process prescribed by the regulations for determining eligibility for disability benefits. See 20 C.F.R. § 404.1520. (The first three steps are not at issue. Mrs. Norwood was not gainfully employed and she was severely impaired, but her impairment did not meet or equal the severity criteria specified by the Listing of Impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.) When he came to step four, the ALJ determined that Mrs. Norwood could perform her past relevant work as a sewing machine operator. Not stopping there, as he was permitted to do under the five-step process, the ALJ went on to step five and found in the alternative that prior to May 19, 1988, Mrs. Norwood was not disabled because, based on her age, education, work experience and residual functional capacity for sedentary work, she could also perform a significant number of jobs in the national economy pursuant to Grid Rules 201.15 and 201.22 of the Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, subpt. P, app. 2, tab. 1.
 
 
 12
 As to the step four determination, we conclude that the ALJ was in error in finding that Mrs. Norwood could perform her past relevant work as a sewing machine operator. This finding was based on an understanding that Mrs. Norwood did not have to operate foot controls. In fact, however, the record shows that Mrs. Norwood had to use both feet to operate foot controls in her prior employment.
 
 
 13
 Because Mrs. Norwood could not perform her past relevant work, the burden shifted to the Secretary to prove there was other work in the economy that she could perform. Barney v. Secretary of HHS, 743 F.2d 448, 449 (6th Cir.1984). No vocational expert was called to testify in the proceeding initiated by the second application for benefits, and the record reveals no evidence to support the required showing. The ALJ did say that there was testimony in the earlier proceeding that Mrs. Norwood had transferrable skills. We have no record of that testimony, however; there is no evidence of transferrable work skills in the record before us.
 
 
 14
 This lack became crucial as of Mrs. Norwood's fiftieth birthday, which occurred on October 4, 1987. On that date, even with a capacity for sedentary work, Grid Rule 201.14 of the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, app. 2, tab. 1, dictates a finding of disability in the absence of transferrable skills. Such a finding was not dictated earlier, and there is ample evidence to support the finding of no disability with respect to the period prior to Mrs. Norwood's fiftieth birthday.
 
 
 15
 Accordingly, we REVERSE the judgment and REMAND the case to the district court with instructions that it be remanded to the Secretary for an award of disability benefits as of the claimant's fiftieth birthday.