**Monty H. MCILROY, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 01–4195.

United States Court of Appeals, Sixth Circuit.

Aug. 5, 2002.

Before SILER, COLE, and CLAY, Circuit Judges.

Monty H. McIlroy appeals a district court judgment affirming the Commissioner's denial of his application for social security disability insurance benefits. The parties have waived oral argument and this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

McIlroy filed an application for social security disability insurance benefits alleging that he suffered from hyperinsulin anemia, bilaterial carpal tunnel syndrome, hyperhemoglobinism, vascular fragility, and agoraphobia. In addition, McIlroy suffered a stroke in January 1985. Following a hearing, an administrative law judge (ALJ) determined that McIlroy was not disabled because he could perform a substantial number of jobs in the economy.

The Appeals Council declined to review the ALJ's decision. McIlroy then filed a complaint seeking judicial review of the Commissioner's decision. The district court subsequently granted judgment to the Commissioner.

Upon review, we conclude that substantial evidence exists to support the Commissioner's decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989).

McIlroy contends that the hypothetical questions the ALJ presented to the vocational expert were incomplete as they did not include all his mental limitations. McIlroy asserts that based on the mental residual functional capacity evaluations in the record, he must be found disabled. McIlroy further feels that there is a conflict as to which exhibits the ALJ used to substantiate the hypothetical questions presented to the vocational expert. He contends that although the ALJ stated that she relied on exhibits 2F, 3F, and 5F, the ALJ actually relied upon exhibits 6F and 8F.

An ALJ is entitled to rely upon the testimony of a vocational expert in response to hypothetical questions where the questions accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir.1996). However, the ALJ is only required to incorporate into the hypothetical questions those limitations that have been accepted as credible. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118–19 (6th Cir.1994).

In exhibit 2F, Dr. Heinrich reported that he measured McIlroy's blood pressure once in 1995 and twice in 1994. His records are devoid of any objective medical evidence which portrays a mental condition prior to the expiration of McIlroy's insured status. In Exhibit 3F, there was no mental diagnosis as a result of pastoral counseling. Both exhibits offer no objective evidence that McIlroy suffered a mental impairment. Exhibit 5F is based on the diagnosis of Dr. Chamburg, a licensed psychologist, who performed a psychological evaluation. Dr. Chamburg concluded that McIlroy was incapable of handling stress, the public, and coworkers. However, Dr. Chamburg's examination was not until 1997, five years after McIlroy's insured status expired. Although the ALJ stated that she relied upon the exhibit during the hearing, she did not make such a reliance in her decision, as the examination was untimely.

In Exhibit 6F, Dr. Coffman stated that McIlroy had an affective disorder and a personality disorder. He found McIlroy to have a moderately limited ability to maintain attention and concentration for extended periods, perform activities within a schedule, and complete a normal workday. The ALJ noted in the hypothetical that McIlroy's personality traits indicated that he did not "really want to deal with people very much" and explained that she restricted McIlroy to no public contact, and only minimal or superficial contact with others.

McIlroy notes that in Exhibit 10F, Dr. Johnson's, June 8, 1998, residual functional capacity assessment indicates that he was disabled. However, Dr. Johnson's report was made years after McIlroy's insured status expired and was made at the request of McIlroy's attorney. The ALJ rejected Dr. Johnson's report because it was made four years after he stopped treating McIlroy and over five years after the expiration of McIlroy's insured status.

Further, Dr. Johnson's 1998 opinion contradicts his earlier statements and opinions in 1993, when he last treated McIlroy. Nearly one year after McIlroy's insured status expired, Dr. Johnson stated that

McIlroy had experienced very significant positive growth and personality changes. Dr. Johnson's reports in 1987, 1988, and 1993 showed McIlroy had significant increases in mental functioning and a stable level of self-esteem. He was a mentally active, educated individual, with normal social skills, and a consistent pattern of improved mental health. Thus, as Dr. Johnson's June 1998 opinion contradicted his own previous findings, the ALJ reasonably rejected Dr. Johnson's 1998 assessment. *See Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988).

As the ALJ's hypotheticals to the vocational expert included McIlroy's mental restrictions prior to the expiration of his insured status, the ALJ could rely on the vocational expert's testimony. Thus, the decision of the Commissioner is supported by substantial evidence.

Accordingly, we affirm the district court's judgment.