**Lisa A. POMPA, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 02–2335.

United States Court of Appeals, Sixth Circuit.

Aug. 11, 2003.

Before NORRIS, BATCHELDER, and ROGERS, Circuit Judges.

## ORDER

Lisa A. Pompa appeals a district court judgment affirming the Commissioner's denial of her application for social security disability insurance benefits. The parties have waived oral argument and this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Pompa filed an application for social security disability insurance benefits alleging that she was disabled due to arthritic joint pain. After two hearings, an administrative law judge (ALJ) found that Pompa could perform a significant number of jobs in the economy. Therefore, the ALJ denied benefits. Although the Appeals Council granted review of the ALJ's first decision and ordered a remand, the Appeals Council declined to review the ALJ's last decision. Pompa then filed a civil action seeking judicial review of the Commissioner's decision. Upon de novo review of a magistrate judge's report, the district court affirmed the denial of benefits and granted judgment to the Commissioner.

Upon review, we conclude that substantial evidence exists to support the Commissioner's decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989).

■ Pompa contends that she meets the disability standard under Social Security Ruling (SSR) 96–9p. SSR 96–9p states that when an individual is unable to perform substantially all the sedentary occupations listed, the individual will be unable to perform the full range of sedentary work and her occupational base will be eroded by the additional limitations. The ruling provides that the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability. The ruling states that if an individual is unable to perform her past relevant work and the individual is unable to perform the full range of sedentary work, consideration must be given to whether there is other work in the national economy which the individual could perform. That is exactly what occurred in this case. As Ms. Pompa could not perform the full range of sedentary work, the ALJ obtained the testimony of a vocational expert. Based on hypothetical questions incorporating Pompa's physical restrictions, the vocational expert testified to approximately 3,200 positions in the Detroit area which Pompa could perform. As the vocational expert's testimony establishes that there are a substantial number of jobs in the economy which Pompa could perform, the ALJ, relying on the vocational expert's testimony, did not commit reversible error in concluding that Pompa was not disabled. *See Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 150 (6th Cir.1996).

■ Pompa argues that the ALJ erred by finding that a number of her impairments were not severe under the regulations. However, the ALJ did determine that Pompa had at least one severe impairment. Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps. 20 C.F.R. § 404.1545(e). Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence. As the ALJ considered all of Pompa's impairments in her residual functional capacity assessment finding, Pompa's argument is without merit.

■ Pompa contends that the decision to deny benefits is not supported by substantial evidence as hypothetical questions posed to the vocational expert did not take into account Pompa's exertional and non-exertional impairments. Pompa argues that the ALJ should have included in her residual functional findings and hypothetical questions limitations caused by Pompa's migraine headaches and a mental impairment. With respect to the headaches, the ALJ did find Pompa's headaches to be severe. However, the ALJ did not credit Pompa's allegations regarding the frequency of the headaches. The ALJ noted that Pompa had testified that since 1987 she had headaches three or four times per week. In July 1987, when she was treated for a headache, she stated that her last one had occurred the previous month. The ALJ discussed Pompa's many visits to the emergency room for treatment of headaches, but noted that on various occasions in 1998 Pompa left without any treatment or was noted only to be in mild discomfort before being given narcotic medication.

Pompa supports her allegations by referring to her own testimony, statements she made to doctors, statements in emergency room records, and doctors' reports. The ALJ determined that Pompa's use of pain medication and her search for medical treatment related to her dependency on pain medication. The evidence indicates that Pompa was seeking treatment to obtain pain medication. In a progress report dated November 1994, Pompa attempted to obtain a prescription for Darvoset, while she had been prescribed ninety of the pills

only nineteen days earlier. Approximately one and a half years later, Dr. Al–Azem noted that Pompa's physical examination was totally unremarkable and told Pompa that he would no longer refill her pain medication prescription. Pompa's actions do not indicate that her alleged migraines restricted her ability to work.

With regards to Pompa's alleged depression, the record indicates that the alleged mental impairment was not supported by objective medical evidence. Dr. Reich found Pompa to have good or very good abilities to perform all mental functions. Further, Pompa gave contradictory reasons for quitting her job. In April 1995, Pompa stated that she stopped working in order to stay home with her children, but testified at the hearing that she quit work due to pain in her elbow. Neither statement indicated a mental impairment. As the hypothetical questions to the vocational expert incorporated Pompa's physical restrictions which were supported by the objective medical evidence, it was not erroneous for the ALJ to rely on the vocational expert's answers in concluding that Pompa was not disabled.

Pompa contends that the ALJ improperly used the medical/vocational guidelines to defeat her claim. However, the ALJ based her decision on the testimony of the vocational expert who testified to a significant number of jobs in the economy. The ALJ did not rely on the medical/vocational guidelines to conclude that Pompa was disabled. The argument is without merit.

Pompa argues that the court should grant her benefits and not remand the case for further proceedings. However, as the decision of the Commissioner is supported by substantial evidence, neither a remand nor a reversal for the award of benefits is appropriate.

After the ALJ's decision, Pompa submitted additional evidence to the Appeals Council. Pompa states that this evidence was not available until after the ALJ issued her decision. Therefore, it was submitted to the Appeals Council. However, this court cannot consider this evidence for purposes of determining whether substantial evidence supports the final decision of the Commissioner because the evidence was not in the record before the ALJ. Instead, the court may consider the additional evidence only for the purpose of determining whether a remand is appropriate. *See Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Although Pompa refers to the evidence in her appellate brief, she has not requested a remand before this court. Further, the evidence submitted to the Appeals Council does not warrant a remand. *See Willis v. Sec'y of Health and Human Servs.,* 727 F.2d 551, 552–54 (6th Cir.1984).

Accordingly, we affirm the district court's judgment.