Everett SCHULER, Plaintiff–Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.

No. 03–3734.

United States Court of Appeals, Sixth Circuit.

Sept. 8, 2004.

Leonard J. Stayton, Inez, KY, for Plaintiff–Appellant.

Michael S. Endicott, Paintsville, KY, Nancy L. Bingaman, Chicago, IL, for Defendant–Appellee.

Before: KEITH, CLAY, and GIBBONS, Circuit Judges.

GIBBONS, Circuit Judge.

Plaintiff-appellant Everett Schuler appeals the district court's decision affirming the Commissioner of Social Security's denial of disability benefits. Because there is substantial evidence to support the finding of the administrative law judge (ALJ) that Schuler was not disabled during the time period in question, we affirm the decision of the district court.

## I.

Schuler was born on August 7, 1954. He has a high school education in special education classes. He worked as a laborer for a coal company for nineteen years, until he was injured on the job in 1993.

Schuler filed an application for disability insurance benefits on September 9, 1994, and an application for supplemental security income benefits on February 1, 1995. The ALJ denied Schuler's applications initially, but upon reconsideration granted Schuler's application for disability insurance benefits for the period from May 5, 1993, through September 30, 1994, but denied his applications for the period from September 30, 1994, forward. The ALJ's grant of benefits was based on a finding that Schuler's physical condition related to a herniated disc equaled Listing 1.05C of 20 C.F.R. Part 404, Subpt. P, App. 1 (Appendix 1), which deals with vertebrogenic disorders. The Appeals Council rejected Schuler's appeal of the partially favorable decision on May 1, 1997. Schuler appealed to the United States District Court for the Southern District of Ohio on June 27, 1997.

Meanwhile, on June 10, 1997, Schuler filed a second application for disability insurance benefits, this time alleging disability due to a mental impairment. This application was granted without a hearing based on a finding that Schuler meets the listing requirements for mental retardation found at Listing 12.05C.[1] Pursuant to this finding, benefits were awarded from February 15, 1996, forward.

Upon joint application of the parties, Schuler's appeal was remanded from the district court back to the Commissioner of Social Security (Commissioner) for the taking of additional evidence on Schuler's mental impairment and the issuance of a new decision by an ALJ. The new ALJ decision, issued on June 5, 2000, noted that the only issue was whether Schuler was disabled from September 30, 1994, through February 15, 1996. The ALJ found that he was not. That decision is the final

---

1. Schuler argues that this determination has *res judicata* effect on the current proceeding with respect to the finding of mental retardation. As the district court noted, however, *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir.1997), on which Schuler relies, requires only that final administrative decisions made after a hearing are entitled to this deference. "*Res judicata* applies in an administrative law context following a trial type hearing." *Id.* at 841.

decision of the Commissioner, which is now before this court. After the ALJ's denial, Schuler appealed to the Appeals Council, where he received an unfavorable decision. He then appealed to the district court, which denied his appeal. The only issue before this court is whether Schuler was disabled during the period from September 30, 1994, to February 15, 1996.

## II.

When reviewing the Commissioner's finding that a claimant is not disabled within the meaning of the Social Security Act, we consider only whether the decision is supported by substantial evidence and whether the ALJ employed the proper legal standards. *See* 42 U.S.C. 405(g) (2004); *see also Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir.2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance...." *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir.1989). The Commissioner's findings are not subject to reversal "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton,* 246 F.3d at 772. All that is required to uphold the Commissioner's findings is that the record contain evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (citations omitted). We may not review the case *de novo,* resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

## III.

In order to qualify for benefits under the Social Security Act (the Act), a claimant must be "disabled." A disability under the Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual may be disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether a specific job vacancy exists for him or whether he would be hired if he applied for work." *Id.* § 423(d)(2)(A). "Work which exists in the national economy" means work which exists in significant numbers either where the applicant lives or in other regions of the country. *Id.*

The Act prescribes a five step inquiry for determining whether an adult is disabled. 20 C.F.R. § 416.920(a)(4). In step one, the Commissioner considers the applicant's work activity. If the applicant is performing substantial gainful activity, the applicant is not disabled. *Id.* § 416.920(a)(4)(i). In step two, the Commissioner considers the medical severity of the applicant's impairment. If the applicant does not have a medically determinable physical or mental impairment or combination of impairments that is severe and is expected to result in death or to last at least twelve months, the applicant is not disabled. *Id.* § 416.920(a)(4)(ii). An impairment is severe if it limits an applicant's ability to do basic work activities, such as walking, standing, sitting, seeing, following instructions, using good judgment, and coping in a work setting. *Id.* § 416.921. In step three, the Commissioner again considers the medical severity of the applicant's impairments. If the applicant has an impairment that is equal to one listed in the Listing of Impairments in Appendix 1 and is expected to result in death or to last at least twelve months, the applicant is dis-

abled. *Id.* § 416.920(a)(4)(iii). If the applicant does not have a listed impairment, in step four the Commissioner considers the applicant's residual functional capacity and his past relevant work. If the applicant can still do his past relevant work, he is not disabled. *Id.* § 416.920(a)(4)(iv). In step five, the Commissioner considers whether, given the applicant's residual functional capacity and his age, education, and work experience, he can make an adjustment to other work. If the applicant can make an adjustment to other work, then he is not disabled. If he cannot make such an adjustment, then he is disabled. *Id.* § 416.920(a)(4)(v).

■ Here, Schuler first argues that the ALJ erred at step three of the analysis by not finding that his impairment met the requirements for the mental retardation listing, 12.05C in Appendix 1. Under this listing, a claimant can meet the criteria for mental retardation in one of four ways:

(1) Mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

(2) A valid verbal, performance, or full scale IQ of 59 or less;

(3) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

(4) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment resulting in at least two of the following:

(a) Marked restriction of activities of daily living;

(b) Marked difficulties in maintaining social functioning;

(c) Marked difficulties in maintaining concentration, persistence, or pace; or

(d) Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The ALJ's finding that Schuler did not meet these requirements was supported by substantial evidence. The parties do not dispute that Schuler does not meet the requirements for either (1) or (2). He is not dependent on others for basic personal needs such as eating and bathing, and he has never received an IQ score below 59. The parties dispute, however, whether Schuler meets the requirements for (3) and (4).

Schuler has taken numerous IQ tests over the course of his life, with widely varying results. Most of the tests were conducted while Schuler was still in school. The first of these was in 1964, using the Kaufmann IQ test. Schuler scored a 69. In 1969, he took the California IQ test and scored an 89. Schuler took another California test in 1966, on which he scored a 72. Then, he took the Hammer–Nelson test twice in 1967, scoring a 69 and a 71. Schuler was tested again in 1971, while he was in the eleventh grade, for the purpose of establishing a "current and valid" IQ score. This test revealed a verbal IQ of 78, a performance IQ of 73, and a full scale IQ of 74. The test was based on the Wechsler Adult scale. More recently, Dr. Cynthia L. Clay, a licensed psychologist, evaluated Schuler on August 19, 1997. Clay estimated Schuler's level of intellectual functioning as average. IQ testing resulted in a verbal score of 72, a performance score of 68, and a full scale score of 69. Dr. Clay stated that the test results were of questionable validity due to Schuler's slow pace and lack of concentration.

Faced with these widely varying results, the ALJ ultimately credited the Wechsler

test conducted in 1971 as the most accurate. Dr. George Serednesky, the psychological expert, opined that the Wechsler method was more reliable than the methods used for the other tests. Dr. Serednesky also told the ALJ that the lower scores should be disregarded, stating that "you pretty much take the highest IQ ever recorded, unless there's been some brain damage from an injury" or some other factor that would account for a reduced score. In addition, as the ALJ noted, the administrator of the other tests, Schuler's school, placed the greatest weight on the 1971 test, since it was conducted for the purpose of obtaining a "current and valid" score soon after the other tests were completed.

The ALJ in this case was presented with an IQ score which makes Schuler ineligible for 12.05C. Admittedly, other IQ scores entered into evidence would have allowed Schuler to present further evidence of his disability in order to meet the listing. The ALJ, however, also had a much higher IQ score, 89, to consider, and testimony from an expert that the lower scores were of questionable validity. In addition, the validity of the most recent test, which resulted in a score of 69, had been undermined by its own administrator. Under these circumstances, a reasonable mind might accept the Wechsler IQ test as adequate to support the conclusion that Schuler does not meet the requirements for listing 12.05C.

■ Second, Schuler argues that the ALJ improperly rejected the opinion of his treating physician, Dr. Danny Westmoreland, who opined that Schuler was "disabled permanently." The ALJ normally gives considerable weight to opinions from treating sources, since they are most likely to have a full understanding of the claimant's condition. 20 C.F.R. § 404.1527(d)(2). The opinion of a treating physician will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.*

The ALJ, however, retains the responsibility for making the ultimate determination of whether the claimant is disabled. Conclusory statements from a physician that the claimant is disabled are not entitled to deference. As the regulations state, "We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* § 404.1527(e)(1).

Here, in addition to Dr. Westmoreland's conclusory opinion, the ALJ had the opinions of several other doctors to consider. While all agreed that Schuler was impaired to a significant extent, at least three physicians stated that Schuler could still work. For example, Dr. Alan L. Longert stated that Schuler's "alleged severity of symptoms are out of proportion to findings on examination." Dr. Longert opined that although Schuler is unable to return to his former job, "[h]e is capable of doing sedentary to light work." Dr. Robert Turner stated that Schuler was capable of medium duty work, and that he would be an excellent candidate for vocational rehabilitation. Dr. John Harper, a medical expert at Schuler's hearing before the ALJ, stated that Schuler was probably capable of light work. In light of these opinions to the contrary, the ALJ's decision not to accept Dr. Westmoreland's opinion of permanent disability is supported by substantial evidence.

Finally, Schuler argues that the ALJ violated Federal Rule of Evidence 703 because he did not allow Dr. Westmoreland to be present during Dr. Serednesky's testimony. Schuler wanted Dr. Westmoreland to hear the testimony so that he could assist with the cross-examination of Dr. Serednesky. The Federal Rules of Evidence, however, do not apply to administrative hearings. *Cline v. Secretary of Health,* 444 F.2d 289, 291 (6th Cir.1971). Therefore, the ALJ was not required to allow Dr. Westmoreland to be present.

### IV.

For these reasons, we affirm the district court's decision affirming the Commissioner of Social Security's denial of disability benefits.