NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0166n.06
Filed: March 3, 2005

NO. 03-2608

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LUCILLE JOHNSON KUHN,                      )
                                           )
                                           )
            Plaintiff-Appellant,           )
                                           )
                                           )   ON APPEAL FROM THE UNITED
v.                                         )   STATES DISTRICT COURT FOR THE
                                           )   EASTERN DISTRICT OF MICHIGAN
                                           )
COMMISSIONER OF SOCIAL SECURITY, )
                                           )
                                           )
            Defendant-Appellee.            )
_____

BEFORE: SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

**PER CURIAM.**  The claimant, Lucille J. Kuhn, appeals from the latest denial of her

application for Social Security disability benefits.  Before this court, she asserts that the

administrative law judge erroneously concluded that she had not established entitlement

to payments for physical limitations that allegedly prevented her from finding employment

within the national economy.  For the reasons set out below, we affirm the decision of the

district court sustaining the denial of benefits by the Commissioner of Social Security.

# FACTUAL AND PROCEDURAL BACKGROUND

Kuhn worked in Detroit, Michigan, as a janitor and a machine operator until August 1990, when she was attacked outside her place of employment, shot at, and hit in the head with the end of a shotgun. Since that incident, she has not returned to gainful employment and has complained of, among other ailments, weakness in her dominant right hand and severe migraine headaches.

In March 1991, Kuhn filed the first of her applications with the Social Security Administration seeking disability benefits. That claim was denied by an administrative law judge who determined that the plaintiff could return to her past type of employment. The Appeals Council upheld that ruling, which was not appealed further by the claimant. In January 1995, Kuhn filed a second application for benefits and was again denied the relief she sought at the administrative level. Finally, in April 1996, Kuhn filed the present application for benefits. Again, the Social Security Administration ruled administratively that Kuhn did not meet the required disability criteria. She then requested a hearing before an administrative law judge, who concluded in January 1999 that "there are a significant number of jobs in the national economy which [Kuhn] could perform [and that] Claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of th[e] decision." The plaintiff sought review of that determination and presented additional evidence to the Appeals Council, which nevertheless "concluded that neither the contentions nor the additional evidence provides a basis for changing the Administrative Law Judge's decision."

Kuhn then filed an action in the district court, and in response to the complaint, the government conceded that:

> [T]he hypothetical question posed to the vocational expert was flawed, in that it did not accurately reflect Plaintiff's functional limitations. Although the [administrative law judge] asked the vocational expert to assume that the hypothetical individual "could not sit, stand, walk, lift, carry and push," he did not tell the vocational expert to assume the individual had "very little use of the dominant right hand." As the right hand limitation was not posed to the vocational expert, Defendant acknowledges that the SSA did not meet its burden of proving that the claimant has the vocational qualifications to perform alternative jobs in the economy.

The matter was thus remanded to the administrative law judge for an additional hearing. At that proceeding, Kuhn again detailed her physical infirmities and described the debilitating headaches she occasionally suffered. Specifically, she stated that she sometimes did housework or went to church, that she occasionally visited friends and walked almost every day to a corner grocery store located approximately one-half block from her residence. Kuhn also testified that although she could manipulate her arms and fingers at times and pick up coins and buttons with her right hand, that her dominant hand was sometimes useless and that "sometimes, [she couldn't] even write with [her] hand." She also reiterated that she suffered from migraine headaches twice or three times per month and that the episodes lasted "like two day[s], sometimes three."

Near the conclusion of the hearing, the administrative law judge questioned the vocational expert regarding Kuhn's exertional capabilities. In response to that inquiry, the vocational expert informed the administrative law judge that Kuhn "could perform jobs that could be done primarily with the non-dominant hand on a regular basis. They would not

require lifting more than five pounds. Example [sic] would – of jobs that could be performed would include visual inspection and machine tending." The vocational expert further testified that, even taking into account the claimant's limited use of her right hand, at least 5,000 such jobs existed in the region.

When asked by the administrative law judge to consider Kuhn's non-exertional limitations (her migraine headaches), however, the vocational expert testified that there were no jobs in the region that the plaintiff could perform satisfactorily. In explaining his answer, the expert pointed out that the headaches occurred two to three times per month and lasted two to three days at a time. Additionally, he noted that "[t]he medication she takes causes her to become very drowsy."

In ruling upon Kuhn's application for benefits, the administrative law judge agreed with the vocational expert's analysis of the plaintiff's *exertional* capabilities and concluded that she was not physically precluded from performing any relevant work in the applicable labor region. The administrative law judge refused, however, to agree with the vocational expert's assessment of Kuhn's *non-exertional* capabilities. Finding the claimant's testimony "not fully credible," the administrative law judge determined that Kuhn "was not under a 'disability' as defined in the Social Security Act" and, therefore, was not entitled to the benefits she sought.

On appeal to the district court, the parties agreed to refer the matter to a magistrate judge for resolution. After review of the administrative record, Magistrate Judge Binder

ruled that substantial evidence in the record supported the decision of the administrative law judge and, therefore, that the findings of the Commissioner should be affirmed.

## DISCUSSION

Our review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed and is limited to "determining whether the . . . findings are supported by substantial evidence and whether the [commissioner] employed the proper legal standards in reaching [the] conclusion." *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)(per curiam). As noted by the United States Supreme Court, the term "substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). Thus, "[w]e do not review the evidence de novo, make credibility determinations nor weigh the evidence." *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the commissioner's decision must be affirmed, even though the reviewing court might decide the matter differently and even though substantial evidence also supports a contrary conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

In analyzing Kuhn's claim for disability benefits, the administrative law judge properly utilized the five-step sequential analysis detailed in 20 C.F.R. § 404.1520, and ultimately determined that numerous jobs were indeed available for individuals like the plaintiff who had limited use of their dominant hand. Although Kuhn argues that she cannot use her right hand to perform tasks and, therefore, that there is no substantial evidence in this

administrative record to support the administrative law judge's decision, our limited standard of review mandates a different conclusion.

Upon the remand of this matter, the administrative law judge specifically inquired of the vocational expert whether his prediction that there were "at least 5,000" jobs that Kuhn could perform included consideration of "the limited use of [Kuhn's] right hand." Moreover, the administrative law judge's decision to ask about situations in which a claimant had "limited," rather than no, use of a dominant hand was justified by the hearing testimony. For example, despite detailing various difficulties in reaching with and using her right arm and hand, Kuhn admitted under oath that she could "manipulate [her] arms and fingers" "at times," that she could "pick up coins from a table" "sometimes," and that she could "sometimes" "button [her] buttons." Additionally, the record reflects that the plaintiff performed household tasks, went to church, visited friends, and shopped for groceries. Under such circumstances, we cannot say that there is not substantial evidence in the record to support the conclusions of the administrative law judge that Kuhn retains some functioning in her right hand and that there exist jobs in the economy that the plaintiff is suited to perform.

During the second administrative hearing, the administrative law judge also asked the vocational expert whether Kuhn's complaints of migraine headaches, together with evidence of the limited use of her dominant hand, would preclude her re-entry into the workforce. Although the vocational expert concluded that "[t]here's no jobs she could do" considering the two limitations, the administrative law judge did not concur in that opinion

because of his belief that Kuhn was not completely credible in her testimony regarding the effects of the migraine headaches upon her.

Without question, Kuhn's own testimony supports the conclusion that her headaches, which she claimed occurred two to three times per month and lasted for two to three days at a time, would severely hamper her ability to engage in any job for which she would be qualified. As fact-finder, however, the administrative law judge was not required to accept Kuhn's description of her limitations. In this matter, substantial evidence in the record also supports a determination that the claimant was not as debilitated from her migraine headaches as she claimed to be. For example, the administrative law judge noted that as early as June 1991, although Kuhn complained of "intermittent" migraine headaches, she was actively seeking other employment at that time, exhibited no evidence of neurological disability, and was told that she could return to her past work on a full-time basis. After a subsequent evaluation in September 1991, the examining physician found Kuhn to be neurologically "normal" and surmised that the claimant's headaches were compounded by depression and would respond favorably to appropriate treatment with anti-migraine medication.

During an April 1993 visit to a physician, Kuhn reported that her migraines were less severe while taking Elavil. Later appointments, however, revealed little change in the claimant's condition and her Elavil prescription was discontinued in December 1993. Nevertheless, by July 1995, Kuhn claimed that "Motrin does help to alleviate the headaches sometimes." Furthermore, after an examination in August 1996, a medical doctor

concluded that Kuhn's "condition is not severe enough to keep [her] from working, "despite taking only Tylenol 3 as needed for her migraines.

In short, both the claimant's testimony and medical findings support the assertion that Kuhn suffered during the relevant time period from migraine headaches. The plaintiff's own statements provide substantial evidence of the disabling character of that malady. Additional medical data, however, also supports the administrative law judge's conclusion that those headaches were rendered less severe by medication and that Kuhn should not be considered "disabled" as a result of those episodes. The plaintiff has, therefore, failed to establish any error in the administrative law judge's ultimate determination.

Finally, Kuhn asserts that the magistrate judge should have considered certain evidence submitted to the Appeals Council but not evaluated by the administrative law judge upon remand from this court. As argued by the commissioner, however, this court has repeatedly held that evidence submitted to the Appeals Council after the decision of the administrative law judge "cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

The administrative law judge rendered his final decision in this matter on May 23, 2002. After release of that opinion, the claimant "submitted additional records from the

Henry Ford Health System dated August 3, 1994 to January 25, 2002 and a medical report dated March 19, 2002 from Mune Gowda, M.D." Kuhn offers no compelling explanation for her failure to introduce these pieces of evidence during the hearing before the administrative law judge, or at least prior to the release of the administrative law judge's decision. Furthermore, Kuhn has not shown that the evidence she proffered was so material that the administrative law judge would have decided the case differently had he considered the evidence. *See*, *e.g.*, *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988) (per curiam). In fact, some of the additional evidence provides further support for the administrative law judge's determination that Kuhn's migraines were not so severe as to be considered disabling. For example, one report the plaintiff sought to offer notes that Kuhn was given Imitrex nasal spray for her migraines and the claimant herself "states that this is working wonderfully for her." Also, another medical report of a doctor's visit in December 1997 states that Kuhn was given a new migraine medication in the summer of 1997 and that it "was very effective." The magistrate judge thus did not err in refusing to consider the late-offered evidence and in refusing to remand the case yet another time for further consideration of those reports by the administrative law judge.

The standard of review authorized in Social Security disability cases is extremely limited. Even if we were to agree with the plaintiff that benefits were justified, we are not permitted to reverse an administrative determination if substantial evidence supports that decision. Because substantial evidence properly before the administrative law judge in this

matter does indeed support his conclusion that Kuhn is not disabled, we AFFIRM the district court's judgment sustaining the final agency decision.