**Lawrence B. GRECOL, Plaintiff–Appellant,**

v.

**William A. HALTER, Defendant–Appellee.**

No. 01–3407.

United States Court of Appeals, Sixth Circuit.

Aug. 29, 2002.

Before KENNEDY, SUHRHEINRICH and BATCHELDER, Circuit Judges.

### I. Background

Plaintiff–Appellant Lawrence Grecol appeals the denial of disability insurance benefits under Title II of the Social Security Act. Grecol worked for many years as an electrician, until a combination of an injury and a degenerative condition forced him to stop performing that work in 1993. He currently claims to be suffering from severe pain in his head, neck and shoulders,

as well as disorders in his back, hips and knees. He claims that the pain is unbearable, he cannot sit, stand or walk for long periods of time, and he cannot sleep through the night. Grecol also suffers from poorly controlled diabetes and carpal tunnel syndrome, and had coronary artery bypass surgery in 1997.

The ALJ issued a finding of no disability. Although he held that Grecol has severe impairments of cervical degenerative disc disease and coronary artery disease, the ALJ held that these impairments are not equal to any listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (1992). The ALJ also held that Grecol retains residual functional capacity to perform a limited range of light work featuring alternating positions, no repetitive bending or lifting, no constant neck movements, and no constant pushing or pulling. Relying on the testimony of a vocational expert, the ALJ concluded that Grecol is not disabled because there exist a significant number of jobs in the national economy that meet these conditions.

Grecol criticizes the ALJ's conclusions on three grounds: first, as a matter of law, the ALJ failed to give proper weight to the opinions of Grecol's treating physicians; second, the ALJ's finding of no disability is not supported by substantial evidence; third, the ALJ inappropriately excluded evidence of psychological factors from the hypothetical used to elicit the opinion of the vocational expert, Dr. Pearlstein. On the basis of the ALJ's mistreatment of the evidence of psychological problems, we remand to the district court with instructions to remand to the ALJ for a reconsideration of Grecol's status.

## II. Standard of Review

Judicial review of the findings of the Social Security Administration is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's factual findings. 42 U.S.C. § 405(g) (1991); *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679 (6th Cir.1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). If the ALJ's findings are supported by substantial evidence, this court must affirm the ALJ's decision, even if the evidence could support a contrary decision. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir.1993).

## III. Analysis

### A. The ALJ's Weighing of Treating Physician Testimony

Grecol's argument that the ALJ committed legal error by failing to give "controlling weight" to his treating physicians' testimony misstates the law. Opinions of treating physicians are entitled to complete deference only if well supported by medical findings and not contradicted by other evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir.1994); *Cohen v. Secretary of HHS*, 964 F.2d 524, 528 (6th Cir.1992). The ALJ found that the remarks of Grecol's treating physicians (Dr. Diab and Dr. Zahra) "are inconsistent with the medical findings, treatment history, activities of daily living and other evidence in the record." Where the opinions of treating physicians are challenged by other evidence in the record, as they are in this case, complete deference is not required. The ultimate determination of disability is made by the Secretary, not by the claimant's

treating physicians. 20 C.F.R. § 404.1527(e).

## B. The ALJ's Conclusion That Grecol Could Perform Light Work With Limitations

Grecol is suffering from medically determined physical impairments—cervical degenerative disc disease and coronary artery disease.[1] These conditions produce pain and limit his ability to work. However, the ALJ held that these impairments are not equal to any listed in 20 C.F.R. § 404, Subpart P, Appendix 1, and that Grecol's symptoms are not severe enough to support his claim for disability. Grecol appeals this second finding, arguing that no substantial evidence supports the ALJ's conclusion that Grecol's condition is insufficient to "significantly limit [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521.

Subjective complaints of pain may support a claim of disability. *King v. Heckler*, 742 F.2d 968 (6th Cir.1984). In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir.1986), this circuit formulated a test for evaluating subjective pain complaints:

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

As noted above, the ALJ determined that there is evidence of an objective medi-

cal condition. The question is whether there is substantial evidence to support the ALJ's description of Grecol's physical symptoms.

Dr. Nayak observed that Grecol had "no problems with the physical activities of sitting, standing, bending, lifting, carrying or handling objects." (J.A. at 219). Dr. Nayak was one of Grecol's treating physicians, and her observations directly undercut the conclusions of Grecol's other treating physicians. At least two reviewing doctors—Dr. Harris and Dr. Caldwell—noted that Grecol's subjective pain complaints "outweighed" the physical findings. (J.A. at 204, 216).

Dr. Harris observed that Grecol could lift 10 pounds frequently and 20 pounds occasionally, a capacity consistent with the ability to perform light work. Although Dr. Harris concluded that Grecol should be restricted to sedentary work, the ALJ decided that Dr. Harris's objective observation regarding Grecol's lifting capacity undermined his ultimate conclusion. Dr. Caldwell agreed, opining based on Dr. Harris's physiological observations that Grecol should be able to perform limited light work. (J.A. at 211–218). Dr. Caldwell is a non-examining doctor. In the hierarchy of opinions, the opinion of a non-examining physician is entitled to the least weight. *See Lashley v. Secretary of Health & Human Services*, 708 F.2d 1048 (6th Cir.1983); *Allen v. Califano*, 613 F.2d 139 (6th Cir.1980). However, the ALJ does not rest his conclusion solely on the opinion of Dr. Caldwell, and provides some reasons for his dismissal of the other treating doctors' opinions. Moreover, the ALJ did incorporate some of Dr. Harris's findings regarding movement limitations and the need for frequent position changes.

---

1. There is substantial evidence in the record to affirm the ALJ's conclusion that Grecol was not suffering from a medically-determined impairment regarding his hips and knees. As

the ALJ points out, the weight of objective medical evidence—such as x-rays and physical examinations—revealed no condition or disorder in those areas.

Although Grecol's primary treating physician, Dr. Diab, concluded that Grecol was permanently and totally disabled, the ALJ noted that in several places Dr. Diab's diagnosis is not supported, and indeed is sometimes undermined, by the objective medical evidence in the record. For example, while Dr. Diab consistently presents an extremely pessimistic view of Grecol's condition on disability questionnaires, his most recent examination notes show improvement in Grecol's condition, and his treatment history is not consistent with such severe impairment. (J.A. 255, 256, 263). Dr. Diab reported conditions that were not demonstrated by any objective medical evidence, such as "gross anatomical deformities of hip or knee." (J.A. at 252). Finally, Dr. Diab's assessment of Grecol's functional limitations is inconsistent with the assessments of several other doctors, including Dr. Nayak, one of Grecol's treating physicians.

Grecol's cardiologist, Dr. Zahra, did substantiate Dr. Diab's diagnosis. However, the ALJ reasonably discounted Dr. Zahra's opinion because his examination occurred shortly after Grecol's coronary artery bypass surgery, and therefore reflected a temporarily diminished physical capacity as a result of that procedure. Grecol's final treating physician, Dr. Shall, also concluded that Grecol was entirely unable to perform work, but more recent examinations by at least three doctors—Dr. Bray, Dr. Nayak, and Dr. Harris—discredit that conclusion.

It is true that the ALJ seriously misreported Grecol's level of activity and ignored his testimony regarding his limited lifestyle. The ALJ reported that Grecol drives and goes shopping, but the record indicates he drives infrequently and only with assistance, and that he only sometimes goes shopping with his wife to keep her company. (J.A. at 52, 67). The ALJ

noted that Grecol "does house chores," but the record indicates he only sometimes puts his breakfast dishes in the dishwasher and wipes the counter tops. (J.A. at 237). The ALJ noted that Grecol "visits," but the record states that he infrequently visits his mother and brother and in the last nine years took one trip to Atlanta. (J.A. at 346). The ALJ reported that Grecol "does yard work" and "works with a computer," but the record indicates he does no yard work at all and stopped using the computer because it was too painful. (J.A. at 236–37).

The Secretary's response is simply that the credible objective evidence provided by the various doctors does not support Grecol's claim that pain is the cause of the limited lifestyle he leads. The ALJ thoroughly examined and weighed the medical records regarding Grecol's underlying physical condition. In spite of the ALJ's misstatement of Grecol's reported activity levels, therefore, there still exists some substantial evidence to support the ALJ's factual determinations regarding Grecol's condition and his physical limitations on performing light work as indicated in the hypothetical presented to the vocational expert.

## C. The ALJ's Exclusion of the Psychological Evidence From the Hypothetical

All parties agree that Grecol's condition prevents him from performing his old job as an electrician. If a plaintiff cannot perform his past work, the burden shifts to the Secretary to prove the existence of other work, which exists in significant numbers, that the plaintiff can perform. *Price v. Heckler,* 767 F.2d 281 (6th Cir. 1985).

The Secretary relies on the testimony of the vocational expert to carry this burden. The testimony of a vocational expert "must be given in response to a hypothetical

question that accurately describes the plaintiff in all significant relevant respects; for a response to a hypothetical to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994).

Both of the mental health professionals who reviewed Grecol concluded that he was suffering from depression due to chronic pain. Notably, these doctors were both engaged by the SSA to review Grecol's psychological condition. Dr. Wax assigned Grecol a score of 50 on the Global Assessment of Functioning (GAF), which indicates "severe symptoms ... or any serious impairment in social, occupational or school functioning." (Plaintiff's Brief, Attachment B).[2] He noted that Grecol was suffering from "depression (due to this individual's constant pain)." (J.A. at 238). Dr. Wax reported that Grecol had "retarded psycho-motor activity." (J.A. at 235). Dr. Stailey, a mental health professional assigned by the SSA to review Dr. Wax's records, concluded that Grecol was suffering from "depression secondary to chronic pain" and described this as a "severe impairment." (J.A. at 242, 240). Dr. Stailey also reported that Grecol often experienced "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner," (J.A. at 243) and that he was "moderately limited" in his ability to complete a normal work week without interruption from psychologically based symptoms. (J.A. at 245).

Despite this evidence, the ALJ concluded that Grecol had no "specific mental restrictions" and eliminated any reference to psychological factors in the hypothetical

presented to the vocational expert. (J.A. at 18). His conclusion was based on the fact that Grecol was able to concentrate and "relate in a quite [sic] and pleasing manner" during his examination by Dr. Wax, as well as the alleged lack of objective medical support for the severity of the underlying physical pain. *Id.*

The ALJ is charged with assessing the credibility of the witnesses and weighing and evaluating their testimony. *Myers v. Richardson,* 471 F.2d 1265, 1267 (6th Cir. 1972). But when there is no competing evidence, the ALJ is not permitted to substitute his opinions for those of the examining doctors. There is no substantial evidence here—indeed, there is no evidence at all—that the conclusions of Dr. Wax and Dr. Stailey were diagnostically incorrect. Dr. Wax performed a professional psychological assessment and concluded that Grecol was suffering from a serious mental condition. This assessment was validated by Dr. Stailey. Even if Grecol's pain complaints "outweigh" the physiological findings, the psychological sources of his pain are relevant to his capacity to perform basic work functions. 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we will consider ... any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.").[3]

The vocational expert in this case, Dr. Pearlstein, concluded that a hypothetical person limited to light exertion with the need to alternate positions, avoid repetitive bending, lifting, pushing or pulling, and refrain from constant or repetitive neck

---

**2.** Dr. Wax labeled this score on his report as indicating "moderate symptoms," perhaps signaling that he misunderstood a GAF rating of 50 and intended to indicate a less severe impairment. Even if Grecol's symptoms are of reduced severity they still should have been included in the information given to the vocational expert.

**3.** Both the ALJ and the district court appear to confine their examination of psychological evidence to the question of whether Grecol is

movements could be a telephone solicitor, a photo copy machine operator, a visual inspector, or a marker tool. The hypothetical did not include the psychological problems diagnosed by Drs. Wax and Stailey. The ALJ should not have disregarded the psychological evidence and its effect on Grecol's ability to perform basic work activities. This evidence should have been incorporated into the hypothetical presented to the vocational expert.

Accordingly, we remand to the district court with instructions to remand to the administrative law judge in order to consider the evidence of Grecol's psychological condition.

suffering from a mental disability. (J.A. at 17). Grecol admits that he is not disabled as a result of mental illness. However, the psychological roots of his pain-based limitations on his residual functional capacity are still relevant to the vocational expert's assessment.