**Carol J. ADAMS, Plaintiff–Appellant,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant–Appellee.**

No. 01–3273.

United States Court of Appeals, Sixth Circuit.

Jan. 23, 2003.

Before BOGGS and COLE, Circuit Judges, and BATTANI, District Judge.*

PER CURIAM.

In this appeal, we are called upon to review the district's court's order affirming Defendant–Appellee's denial of Disability Insurance Benefits for Plaintiff–Appellant Carol Adams under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 423 (2002). Appellant was denied disability insurance benefits that she claimed were due her based on a severely aggravated case of inflammatory arthritis, status post colectomy and status post ileostomy. Upon review. Magistrate–Judge Nancy Vecchiarelli accepted Appellee's argument that Appellant was not disabled and could perform her past relevant work. Appellant now appeals on the grounds that 1) she is disabled on the medical evidence alone, and 2) the Administrative Law Judge erred in failing to provide the medical expert with post-hearing evidence, thus depriving Appellant of a full and fair hearing required by the Due Process Clause. For the reasons that follow, we AFFIRM the judgment of the district court.

## I.  BACKGROUND

### A.  Procedural History

On October 26, 1994, Appellant filed an application for disability insurance benefits, alleging disability due to non-rheumatoid inflammatory arthritis, status post colectomy and status post ileostomy. Appellant claimed that she became disabled on March 31, 1994. Her application was denied initially, and on reconsideration. Appellant's disability insured status expired on December 31, 1996.

On April 10, 1997, an administrative hearing was held before Administrative Law Judge Robert H. Isbell (hereinafter "ALJ") to review the denial of Appellant's application. On March 26, 1998, the ALJ ruled that Appellant was not disabled since her condition did not meet or equal the Listing 1.02 criteria for disability, nor did it prevent her from engaging in her past relevant work. In making this decision, the ALJ looked to the entire record of medical evidence and diverged from the

* The Honorable Marianne O. Battani. United States District Judge for the Eastern District of Michigan sitting by designation.

opinion of Dr. Harvey Dworken, the medical expert (hereinafter "ME"), who opined that Appellant equaled the Listing 1.02 criteria.

The Appeals Council denied Appellant's request for review on April 16, 1999. Appellant then filed an appeal to the United States District Court for the Northern District of Ohio, whereupon the decision of the ALJ was affirmed.

### B. Medical Evidence

Appellant was a sixty-two year-old high school graduate at the time of her administrative hearing. She has past relevant work experience as a customer service representative in a bank.

On July 12, 1994, Appellant entered the Cleveland Clinic claiming that she had been experiencing chronic back pain for six months, and right side leg pain for two months. She was diagnosed with a perforated duodenal ulcer, perforated sigmoid diverticulitis, polyarthralgia rheumatica, pelvic abscess and malnutrition. While there, she underwent surgery for duodenal perforation repair, appendectomy, vagotomy, pyloroplasty, subtotal colectomy and end ileostomy, and drainage of the pelvic abscess. Upon her release on August 12, 1994, Appellant's lifting and walking were restricted. She was again seen by the Cleveland Clinic from October 19, 1994 to November 2, 1994 for an abdominal/pelvic abscess. No restrictions were placed on Appellant's activity at the time of her discharge.

On January 24, 1995, Dr. Terry Wolpaw, Appellant's rheumatologist, reported to the Bureau of Disability Determination that Appellant was recovering from a chronic abdominal infection which was complicated by persistent drainage and fistula formation. Dr. Wolpaw did not place any restrictions on her working ability. On January 25, 1995, he noted that she had a rising sedimentation rate in June of 1994. He did not believe that Appellant's diagnosis of polymyalgia rheumatica was firm, in part because she responded so poorly to steroid therapy. On May 20, 1995, he reported she had an "open abdominal wound with fistula formation," and was "severely limited physically." Specifically, she was limited to two hours of sitting, less than one hour of walking, minimal bending, lifting and carrying no more than five pounds, handling light objects only, and traveling in a wheelchair.

Three months later, on August 24, 1995. Dr. Samad Saegh reported to the Bureau of Disability Determination that Appellant presented to him on August 7, 1995 with numbness and weakness in her right leg, and constant pain in her upper extremities. Dr. Saegh noted that Appellant had a history suggestive of severe degenerative arthritis, peptic ulcer disease, chronic lung granuloma, remote perforated ulcers and intraabdominal abscess formation, and a non-healing abdominal incision. The ileostomy site functioned well, although the incision was not healed. Dr. Saegh also stated that Appellant walked slowly, but could walk on her toes and heels, and walk toe to heel. Her range of motion in her joints was normal, although painful at times. She had no gross abnormalities in her extremities, nor did she have any motor, sensory or reflex abnormalities. Overall, Dr. Saegh stated that Appellant was limited in her ability to sit, stand, walk, run, climb, lift and bend, but he did not place any specific limitations on these activities.

On September 7, 1995, Dr. James Hardie, a state agency reviewing physician, conducted a functional capacity assessment of Appellant. He opined that Appellant could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for two hours per day, sit for six hours per day, and was

limited in the use of her upper extremities. He further reported that Appellant could occasionally climb ramps or stairs, stoop, kneel, and crouch, although she could never crawl or climb a ladder, rope or scaffold. Dr. Hardie also noted limitations in Appellant's ability to reach in all directions, but not in her ability to handle, finger or feel.

On February 6, 1996, Dr. Thomas Vogel, also a state agency reviewing physician, conducted a functional capacity assessment of Appellant. He reported that Appellant could occasionally lift 20 pounds, frequently lift and carry ten pounds, stand/walk for six hours per day, sit for six hours per day, and had unlimited exertional ability in her upper and lower extremities. Appellant was also unlimited in her ability to climb, stoop, kneel, crouch, crawl, reach, handle, finger and feel.

On August 19, 1996, Dr. R. Matthew Walsh, one of Appellant's primary physicians, reported that Appellant underwent surgery to reverse her ileostomy and repair a large ventral hernia in July, 1996. He noted that her recovery was slow due to a large abdominal wound. Further, because Appellant had very little of her lower intestinal tract, she suffered from persistent, but controllable, diarrhea. He anticipated recovery with full physical activity within six to eight months. On February 28, 1997, Dr. Walsh assessed Appellant's ability to perform work-related tasks. He reported that Appellant was limited to lifting and carrying 20 pounds, but was unlimited in her ability to stand, walk and sit. Furthermore. Appellant could occasionally climb, balance, stoop, crouch, kneel or crawl, and her ability to reach, handle, feel and push

were unaffected by her physical impairment.

### C. Hearing Testimony

At the hearing, the ME, a gastroenterologist, testified that while Appellant did not specifically meet Listing 1.02, she may have *equaled* the Listing based on the severity of her arthritis. He further testified that the perforations in Appellant's intestines and the resulting ileostomy and colectomy could be traced to the strong medications Appellant took for her arthritis. Overall, the ME believed that Appellant had suffered from a major disability since June, 1994.

Evelyn Sindelar, the Vocational Expert (hereinafter "VE"), testified at the hearing that Appellant was capable of performing the job functions of a bank teller without much vocational adjustment.

Finally, during the hearing, the ME, the ALJ and Appellant's attorney agreed that they needed more information regarding Appellant's arthritis, namely her sedimentation rate and rheumatoid factor. The ALJ asked Appellant to obtain this information from Dr. H. Epstein, a rheumatologist. On April 24, 1997. Dr. Epstein examined Appellant for the first time, and reported tenderness in Appellant's PIP joints,[1] and mild swelling in the MP joints [2] and knees The strength of Appellant's right hand was reduced, although her elbows, shoulders and hips were unremarkable. Dr. Epstein further noted that Appellant had an elevated sedimentation rate and an elevated rheumatoid factor. As a result of Appellant's severe and persistent joint pain, Dr. Epstein concluded that Appellant was completely disabled. The ALJ considered this post-hearing report, but

---

1. The PIP (Proximal Interphalangeal) joints are located in the upper portion of each finger.

2. The MP (Metacarpophalangeal) joints are located in the knuckles of the hand.

ultimately decided not to submit it to the ME for further consideration since it came four months after Appellant's last date insured.

## II. STANDARD OF REVIEW

This court applies "the same standard of review as the district court and will uphold the Commissioner's decision if it is supported by substantial evidence." *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 237 (6th Cir.2002) (citation omitted). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993) (citation omitted). A decision which is supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983).

When determining whether the decision is supported by substantial evidence, the court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight." *Mullen,* 800 F.2d at 545 (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1971)). The scope of review is limited to examination of the record. *Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir.1989). Further, where the Appeals Council had declined to review the ALJ's decision, review is limited to the record and evidence before the ALJ. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). However, the court may not review the evidence de novo, make determinations of credibility or weigh the evidence. *Brainard,* 889 F.2d at 681 (citation omitted).

Credibility determinations by the ALJ should be accorded deference by the reviewing court. *Mullen,* 800 F.2d at 545.

## III. DISCUSSION

### A. Appellant's Disability Claim

We first address Appellant's contention that the district court erred in upholding the ALJ's decision because Appellant established that she equaled the disability criteria of Listing 1.02. In particular. Appellant asserts that the ALJ improperly deviated from the ME's opinion that she was disabled due to the combination of her arthritis and gastrointestinal disorders. We reject Appellant's argument.

In order to establish a compensable disability under the Social Security Act, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. §§ 404.1505(a), 416.905(a) (2003). The claimant bears the ultimate burden of establishing a disability within the meaning of the Social Security Act.

To determine whether a claimant is disabled, the Commissioner must conduct a five-step analysis pursuant to 20 C.F.R. § 1520. As discussed in *Casey,* 987 F.2d at 1233, first, a claimant will not be considered disabled if she is engaged in substantial gainful activity. Second, a claimant will not be considered disabled unless she suffers from a severe impairment or combination of impairments that significantly limit her ability to do basic work activities. Third, if the claimant has a disability that meets or equals the regulatory impairments, she is presumed disabled. Fourth, a claimant is not disabled if she can perform past relevant work. Finally, a claim-

ant is not disabled unless her impairment prevents her from doing other work as well. At this final step in the analysis, the burden shifts to the Commissioner to present other work that the claimant can do.

■ In this case, the ALJ held that Appellant failed to satisfy step three of this test because she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.[3] The relevant listing here, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02 (hereinafter "Listing 1.02") provides as follows:

1.02 *Active rheumatoid arthritis or other inflammatory arthritis.* With both A and B.

A. History of persistent joint pain. swelling, and tenderness involving multiple major joints (see 1.00D) and with signs of joint inflammation (swelling and tenderness) on current physical examination despite prescribed therapy for at least 3 months, resulting in significant restriction of function of the affected joints, and clinical activity expected to last at least 12 months; and

B. Corroboration of diagnosis at some point in time by either.

    1. Positive serologic test for rheumatoid factor; or

    2. Antinuclear antibodies; or

    3. Elevated sedimentation rate; or

    4. Characteristic histologic changes in biopsy or synovial membrane or subcutaneous nodule (obtained independent of Social Security disability evaluation).

To meet the requirements of Listing 1.02, a claimant must satisfy both 1.02A and 1.02B. "Multiple major joints," as used in this listing, include "hip, knee, ankle,

shoulder, elbow or wrist and hand." *Id.* at § 1.00D.

As a preliminary point, Appellant does not contest the fact that her condition does not meet this listing. Rather, she claims that her arthritic condition in combination with her gastrointestinal disorders equal Listing 1.02. "An impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Sec'y of Health and Human Servs.,* 814 F.2d 241, 245 (6th Cir.1986).

When evaluating whether a claimant meets or equals the requirements of Listing 1.02, the medical opinions and diagnoses of claimant's treating physicians are entitled to great weight, so long as they are supported by objective medical evidence. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). The opinion of a nonexamining physician, on the other hand. "is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir.1987) (citation omitted). Nevertheless, the Secretary is "not bound by the opinion of a treating physician where there is substantial evidence to the contrary." *Loy v. Sec'y of Health and Human Servs.* 901 F.2d 1306, 1308 (6th Cir. 1990) (citing *Lashley v. Sec'y of Heath and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983)). Furthermore, the ALJ may discredit the opinion of a physician that is outside her area of expertise. *See Turley v. Sullivan,* 939 F.2d 524, 527 (8th Cir. 1991).

Here, substantial evidence exists to support the ALJ's finding that Appellant did

---

**3.** The ALJ also found that Appellant did not meet step 4 of the five-part test since she was capable of performing her past relevant work as a bank representative. Appellant does not contest this finding, but instead relies solely on her argument that she is presumptively disabled under step 3 since she equals the requirements for Listing 1.02.

not meet or equal the requirements of Listing 1.02, despite the ME's opinion to the contrary. At Appellant's hearing, the ME, a gastroenterologist, opined that Appellant's condition equaled Listing 1.02. He relied primarily on the combination of two physician reports: 1) Dr. Wolpaw's January 25, 1995 finding that Appellant had an elevated sedimentation rate; and 2) Dr. Saegh's August 7, 1995 report that Appellant suffered from severe degenerative arthritis.

However, in response to Dr. Wolpaw's report, the ALJ correctly stated that an elevated sedimentation rate satisfies only Listing 1.02B. Because the evidence did not satisfy *both* Listing 1.02A and 1.02B, Appellant did not establish a presumptive disability under Listing 1.02.

Moreover, while the ME relied on Dr. Saegh's diagnosis of severe degenerative arthritis to conclude that Listing 1.02A was met, substantial evidence exists to support the ALJ's conclusion that Dr. Saegh's diagnosis was unreliable since it conflicted with the remainder of his medical report. Despite Dr. Saegh's diagnosis, his physical examination of Appellant revealed no gross abnormalities in her extremities, nor any persisent joint inflammation. Therefore, since Dr. Saegh's medical report did not satisfy Listing 1.02A, the ALJ properly held that the ME's reliance upon such report was flawed.

In addition, substantial evidence supports the ALJ's conclusion that the record as a whole does not establish that Appellant's condition equaled Listing 1.02A. First, Appellant suffers from an arthritic ailment covered by Listing 1.02. but her condition is not sufficiently severe to meet its standards. There is no indication that Appellant's arthritis caused "significant restriction of function of the affected joints" as required by Listing 1.02. On January 25, 1995, Appellant's rheumatologist. Dr. Wolpaw, reported that he did not believe that Appellant's diagnosis of polymyalgia rheumatica (a form of arthritis) was firm. Next, Appellant's status post-colectomy and ileostomy do not raise her condition to Listing 1.02 status. Upon her release in November, 1994, her ileostomy was functioning and she had no restrictions. On May 20, 1995 Dr. Wolpaw indicated she was physically limited, apparently due to the abdominal wound and not arthritis, but she could walk across the room, sit two hours at a time and stand less than one hour. Dr. Saegh noted numbness and pain which did not "significantly restrict" Appellant's ability to walk or her range of motion. And, Drs. Hardie, Vogel and Walsh placed minor, not significant, restrictions on her ability to climb and reach, while other activities such as walking and sitting were practically unrestricted. Lastly, the severity of Appellant's condition varied over time and did not appear to be severe for a continuous period not less than twelve months, as required by 20 C.F.R. §§ 404.1505(a), 416.905(a). To be sure, Appellant's history of illness spanned for several years, but as the record reflects, periods of illness were often interrupted by periods of health.

Therefore, we affirm the district court's order affirming Defendant–Appellee's denial of Plaintiff–Appellant's disability insurance benefits.

B.  Appellant's Due Process Claim

We next address Appellant's assertion of a Due Process violation based on the ALJ's failure to hold a supplemental hearing so that the ME could review the post-hearing report from Dr. Epstein. In particular. Appellant asserts that: 1) the ALJ denied her a fair hearing since Dr. Epstein's report would have conclusively proved her disability status and entitled her to social security benefits; and 2) she was entitled to a supplemental hearing

under the Agency's *Hearings, Appeals Litigation and Law Manual (Hallex)* § I-2-730. We reject Appellant's arguments.

The Due Process clause of the Fifth Amendment guarantees that no deprivation of life, liberty or property will occur without notice and a fair hearing. *Flatford v. Chater,* 93 F.3d 1296, 1303 (6th Cir.1996). To prevail on a Due Process argument. Appellant must first establish that the "United States [is] attempting to deprive [her] of a protected interest." *Id.* at 1303–04. This first element is satisfied here since a "social security claimant has a property interest in benefits for which he or she hopes to qualify." *Id.* at 1304.

Next, "Due Process requires that a social security hearing be 'full and fair.' " *Id.* at 1305 (quoting *Perales v. Richardson,* 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). This calls for this court's consideration of the three factors: "[1)] the private interest that will be affected by the official action; [2)] the risk of erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; [and 3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 1305–06 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1996)). In this context, under the first step of this test, a claimant's "private interest" is her "interest in a fair determination of [her] qualification (or lack thereof) for social security disability benefits and a meaningful opportunity to present her case." *Flatford,* 93 F.3d at 1306.

This court's analysis focuses on step two of the "full and fair" hearing test—the risk of erroneous deprivation of Appellant's interest through the procedure used by the ALJ, and the probable value, if any, of additional or substitute proce-

dural safeguards. Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold the report from the ME had no determinative effect on the outcome of Appellant's hearing. To be deemed presumptively disabled under Listing 1.02. both 1.02A and 1.02B must be satisfied. Dr. Epstein's report, however, was inconclusive as to Appellant's qualification under Listing 1.02A. As the ALJ noted in his opinion. Dr. Epstein's report shed light on only Listing 1.02B factors, particularly Appellant's sedimentation rates and rheumatoid factors. His opinion on Appellant's arthritic symptoms did not satisfy Listing 1.02A, since he noted only some right-hand weakness, and not any significant restriction of the function of Appellant's affected joints. Therefore, even if the ALJ had submitted Dr. Epstein's report to the ME in a supplemental hearing, and the ME had relied on that report in affirming his original conclusion that Appellant equaled Listing 1.02, the ALJ's divergence from that opinion would still have been proper. In fact, without submitting Dr. Epstein's report to the ME, the ALJ considered and dismissed Dr. Epstein's opinion for lack of probative value.

Appellant also relies on the Agency's *Hallex* § I-2-730 to argue that the ALJ unfairly denied her a supplemental hearing. However, Appellant has not established that she was ever entitled to such a hearing under the Agency's administrative rules. Under *Hallex* § I-2-701, "when an [ALJ] receives additional evidence after the hearing *from a source other than the claimant or the claimant's representative,* and proposes to admit the evidence into the record, the ALJ must proffer the evidence, i.e., give the claimant and representative the opportunity to examine the evidence and comment on. object to, or refute

the evidence by submitting other evidence, requesting a supplemental hearing . . . ." *Id.* (emphasis added). This is so because typically a non-claimant will introduce new evidence, and a supplemental hearing will be held to allow the claimant to examine or attack the evidence. Here, Appellant's attorney sought out Dr. Epstein's report and submitted it to the ALJ to support Appellant's case. Since Appellant, the claimant, offered this report, she is not entitled to a supplemental hearing under *Hallex* § I–2–730.

## IV. CONCLUSION

For the reasons stated above, the decision of the district court denying Appellant's claim for disability insurance benefits under Title II and Title XVI of the Social Security Act is AFFIRMED.