Karla Louise DANIELS,
Plaintiff–Appellant,

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant–
Appellee.

No. 02–3224.

United States Court of Appeals,
Sixth Circuit.

July 30, 2003.

Before BATCHELDER and CLAY,
Circuit Judges; and SCHWARZER,
Senior District Judge.*

CLAY, Circuit Judge.

Plaintiff Karla Louise Daniels brought an action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI"), which Plaintiff had filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 423 (2000). Plaintiff now appeals from the district court's order affirming the Commissioner's denial of SSI benefits to Plaintiff. On appeal, Plaintiff argues that she is mentally retarded for purposes of receiving SSI because her condition meets or equals § 12.05(C) of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing 12.05(C)") and that the Commissioner erred in finding otherwise. We are not persuaded by Plaintiff's contentions and therefore AFFIRM the judgment of the district court.

* The Honorable William W Schwarzer, Senior United States District Judge of the Northern District of California, sitting by designation.

## I. BACKGROUND

### A. Facts

Plaintiff was born on October 4, 1970. She graduated from high school in 1989 after successfully completing a vocational curriculum. While in high school, Plaintiff worked part-time at a movie theater as a ticket taker and concessionaire. She was promoted while at this job and was trained to operate projectors, as well as rewind completed reels and repair broken films. She also completed reports that tracked revenue and ticket receipts, and she occasionally filled in for her supervisor.

After high school, Plaintiff earned a state certified cosmetology license and began working full-time at a hair salon as a hair stylist, where she made appointments, provided a wide variety of hair care services, tabulated customers' bills, and sometimes procured additional supplies when the hair salon exhausted them. Plaintiff later quit her hair stylist job and spent the next few years caring for her two young children. Subsequently, for a five-and-a-half-month period between 1997 and 1998, Plaintiff worked as a school bus driver. In early 1998, one week prior to giving birth to twins, Plaintiff quit this job after she fell and injured her back. Plaintiff has not worked since this time; instead she has remained at home and raised her four young children.

The relevant medical evidence consists of the following: (1) a September 1995 consultative psychological evaluation performed by clinical psychologist Dr. Norman Berg, (2) a November 1995 review of Plaintiff's medical records by psychologist Dr. R. Kevin Goeke, and (3) a May 1998 functional assessment by Dr. Berg.

In September of 1995, Dr. Berg administered a Wechsler Adult Intelligence Scale Revised (WAIS–R) test, on which Plaintiff scored a performance intelligence quotient (I.Q.) of 67, a verbal I.Q. of 75, and a full scale I.Q. of 71. Dr. Berg noted that Plaintiff's full scale I.Q. placed Plaintiff within the "borderline range of intelligence" and that clinically Plaintiff "appeared to function in the dull-normal range of intelligence." (Tr. 105.) Dr. Berg also reported that on the Wechsler Memory Scale, Plaintiff's score was 67, i.e., "her memory functions ... [were] below average and impaired when compared with the memory functions of all individuals her age" and were "commensurate with borderline level of intelligence." (*Id.*) Nevertheless, Plaintiff's speech was "relevant, coherent, and clear" (Tr. 103), and Plaintiff demonstrated "fairly good" judgment, "fair to fairly good" insight, "satisfactory" general orientation, and fair attention and concentration. (Tr. 103–04.) Dr. Berg ultimately diagnosed Plaintiff with moderate dysthymia and borderline to dull-normal intelligence, with "moderately severe" psychosocial stressors. (Tr. 106.)

In November of 1995, Dr. Goeke reviewed the evidence in the record and concluded that Plaintiff's mental condition did not meet or equal any listed impairment in the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Dr. Goeke opined that Plaintiff had borderline intellectual functioning and that her depression likely had artificially lowered her I.Q. test scores. Dr. Goeke concluded that Plaintiff's mental impairments posed only slight work-related limitations upon her daily activities and moderate limitations upon her social functioning. According to Dr. Goeke, Plaintiff manifested the cognitive functioning skills needed to perform simple routine tasks.

Plaintiff met with Dr. Berg again in May of 1998, at which time he performed a functional assessment and concluded that Plaintiff "exhibited no major difficulty which would significantly interfere in her functioning adequately in [making occupational adjustments]." (Tr. 197.) Dr. Berg

again noted Plaintiff's earlier full-scale I.Q. of 71, as well as her Wechsler Memory score of 67, but added that her "[t]hought organization and comprehension [we]re adequate with no impairment noted." (Tr. 198.)

## B. Procedural Background

Plaintiff filed her application for SSI benefits on July 27, 1995, citing disability due to depression and back pain. The Social Security Administration (SSA) denied her application initially and on reconsideration. Plaintiff then requested an administrative hearing, at which time she also contended that her condition met or equaled the criteria of Listing 12.05(C), based upon her performance I.Q. score of 67 on the WAIS–R during Dr. Berg's evaluation. An administration hearing was held on February 19, 1997. Thereafter, the administrative law judge (ALJ) issued a decision concluding that Plaintiff did not have an impairment of Listing severity and that she retained the residual functional capacity to perform some light work in the national economy. The ALJ therefore denied benefits.

However, upon Plaintiff's request for review, the Appeals Council determined that the "[t]he record contain[ed] insufficient information on which to assess the severity of the claimant's impairments." (Tr. 175.) In particular, the Council pointed out Plaintiff's low I.Q. scores in Dr. Berg's performance evaluation, as well the report's conclusions that Plaintiff tested in the borderline range of intellectual functioning, and clinically appeared to be in the dull-normal range of intellectual functioning. "Consequently," the Council continued, "the record does not clearly establish whether or not the claimant's intellectual impairment meets the requirements of section 12.05(C) of the Listings of Impairments in Appendix 1, Subpart P of the regulations." (Tr. at 176.) It therefore vacated the ALJ's determination and re-

manded Plaintiff's case to the ALJ for further proceedings.

On remand, a supplemental hearing was held, during which Dr. Linda Hartman, Ph.D., a clinical psychologist, testified that she had read Plaintiff's medical records and opined that Plaintiff did not meet or equal Listing 12.05(C). Dr. Hartman testified that Plaintiff's performance I.Q. of 67 appeared lower than appropriate when viewed within the context of her overall intelligence testing, because one of the subtests comprising the performance I.Q. score was "extremely discrepant" and skewed her overall performance I.Q. score. (Tr. 307–08.) According to Dr. Hartman, Plaintiff retained a limited but satisfactory mental ability to work.

Thereafter, the ALJ issued a second decision, again denying Plaintiff benefits. The ALJ rejected Plaintiff's argument that she possessed an impairment meeting or equaling Listing 12.05(C), instead finding that Plaintiff suffered from borderline intellectual functioning rather than mental retardation. In so finding, the ALJ pointed out Dr. Berg's finding that Plaintiff appeared clinically to function in the dull-normal range of intelligence, as well as Dr. Hartman's observation that Plaintiff's level of functioning contradicted her I.Q. score. Plaintiff again requested review, but the Appeals Council denied this request, making the ALJ's second decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Plaintiff then timely filed suit in the district court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), on September 18, 2000. The case was referred to Magistrate Judge Timothy S. Hogan, who filed a Report and Recommendation on October 31, 2000, recommending that the Commissioner's decision be affirmed. Plaintiff filed objections to the Report and Recommendation, which the district court over-

ruled, instead adopting the Report and Recommendation and affirming the ALJ's decision. This timely appeal followed.

## II. STANDARD OF REVIEW

We have jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. § 405(g), which specifies that the Commissioner's factual findings are conclusive if they are supported by substantial evidence. Substantial evidence "is generally defined as such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir.1999) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Thus, "[e]ven if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached." *Id.* at 389–90, 91 S.Ct. 1420 (citing *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997)). Nevertheless, " '[s]ubstantial evidence' means 'more than a mere scintilla.' " *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir.2001) (citations omitted). In determining whether the Commissioner's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole" and consider "whatever in the record fairly detracts from its weight." *Crouch v. Sec. of Health & Hum. Servs.,* 909 F.2d 852, 855 (6th Cir.1990) (quotations omitted).

## III. ANALYSIS

A person is disabled under the Social Security Act if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in *any other kind of substantial gainful work* which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (emphasis added). Thus, a claimant bears the burden to establish (1) the existence of a medically determinable physical or mental impairment that could be expected to result in death or that had lasted or could be expected to last for a continuous period of not less than twelve months, and (2) that such impairment(s) render such claimant unable to engage in any substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A), (B).

There are five steps in evaluating whether a claimant can engage in any substantial gainful activity. 20 C.F.R. § 416.920; *Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir.2001).

First, the claimant must demonstrate that he or she is not currently engaged in "substantial gainful employment" at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he or she suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, the Commissioner will find the claimant "disabled" if the claimant can then demonstrate that his or her impairment meets the durational requirement and "meets or equals a listed impairment" from 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, if the impairment does not meet or equal a listed impairment (but the impairment is nevertheless "severe" and meets the durational requirement), the Commissioner will then review the claimant's residual functional capacity (RFC) and relevant past work to determine if the claimant can engage in past work; a claimant who can do past work is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if the claimant cannot perform past work, the Commissioner will consider other factors, such as the claimant's RFC, age, education, and past work experience, to determine if the claimant can perform *other* work in the economy; if he or she cannot perform other work, the Commissioner will find him or her disabled. 20

C.F.R. § 404.1520(f). The burden of proof lies with the claimant at the first through fourth steps; the burden shifts to the Commissioner at the fifth step. *Her*, 203 F.3d at 391.

Plaintiff argues that she is presumptively disabled because she has sufficiently demonstrated, at the third step, that her severe impairment "meets or equals a listed impairment." 20 C.F.R. § 404.1520(d). Specifically, she argues that her impairment meets or equals Listing 12.05(C), Mental Retardation. Listing 12.05 describes the criteria as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> *C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .*

Id. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (emphasis added). The Regulations further explain what a claimant must prove for purposes of meeting the requirements of the Listing:

> [Listing 12.05] also contains four sets of criteria (paragraphs A through D). *If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.*

Id. § 12.00(A) (emphasis added); *see also id.* ("Specific symptoms, signs, and laboratory findings in the paragraph A criteria of any of the listings in this section cannot be considered in isolation from the description of the mental disorder contained at the beginning of each listing category."). Thus, based on this characterization, a claimant must prove the following: (1) the claimant suffers from "significantly subaverage general intellectual functioning," (2) the claimant suffers from "deficits in adaptive functioning," (3) such deficits initially manifested during the developmental period (i.e., before age 22), and (4) one of the four criteria (A, B, C, or D) is met.[1]

The ALJ acknowledged Plaintiff's WAIS–R performance I.Q. of 67, but he determined that she nevertheless was not mentally retarded, pointing out Dr. Berg's observation that she clinically appeared to function at a level exceeding her test score. In other words, the record indicates no findings that Plaintiff suffered from "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Substantial evidence supports this finding, given a fair reading of Dr. Berg's reports, as well as Dr. Goeke's review of the record and Dr. Hartman's testimony. None of the psychologists concluded that Plaintiff suffered from "significantly subaverage general intellectual function" or "deficits in adaptive functioning." Moreover, the record shows

---

1. Plaintiff argues on appeal that Listing 12.05(C) only requires a claimant to provide an I.Q. score of 60–70 and possess an additional limitation, i.e., the diagnostic description in the introductory paragraph of Listing 12.05(C) does not impose additional required showings. However, we already have rejected this argument. *See Foster*, 279 F.3d at 354–55 (requiring a claimant additionally to demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning" and an onset preceding age 22).

that Plaintiff graduated from high school, earned a cosmetology license, and possesses prior work experience in a movie theater, as a hair stylist, and as a school bus driver; i.e., her educational background and work experience demonstrate an "ability to perform relatively complicated tasks." *Foster*, 279 F.3d at 355 (citations omitted).

We further note that Plaintiff has not provided any evidence, as required, that her mental deficiency initially manifested before age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Plaintiff insists that she has, pointing to Dr. Goeke's paperwork, in the section labeled "Mental Retardation and Autism," where he checked off the box that stated, "Significantly subaverage general intellectual functioning with deficits in adaptive behavior *initially manifested during the developmental period (before age 22)*, or pervasive developmental disorder characterized by social and significant communicative deficits originating in the developmental period, as evidenced by at least one of the following...." (Tr. 90) (emphasis added). The "following" was represented by five choices:

1. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded

2. A valid verbal, performance, or full scale I.Q. of 59 or less

3. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function

4. A valid verbal, performance, or full scale I.Q. of 60 through 70 or in the case of autism, gross deficits of social and communicative skills

5. Other

(*Id.*) Dr. Goeke checked off the "Other" option, indicating in the adjoining space "Borderline I.Q." and jotting down next to that his opinion that Plaintiff's scores had been artificially lowered by her depression. (*Id.*)

Plaintiff's argument fails to persuade us. It is unclear why Dr. Goeke checked off that box, but he had specifically indicated his belief that Plaintiff was not mentally retarded, and we do not interpret his box-checking as a contrary acknowledgment. Most likely he checked off that particular box for lack of a better option on the form. After all, there was no option for "[s]ignificantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested *after* the developmental period." At any rate, we generally require a claimant to meet this requirement through more definite means, such as providing the Commissioner with scores from a test taken prior to the age of 22 or conclusions from an evaluation performed before Plaintiff had turned 22, rather than through perfunctory box-checking. *See Foster*, 279 F.3d at 354–55 ("None of [claimant's] testing or evaluation was contemporaneous with her developmental period; she was already 42 years of age when the first testing was performed in 1997."). No such findings are in the administrative record, and Plaintiff does not suggest on appeal that such findings exist.

Finally, we are not persuaded that Plaintiff's impairment equals Listing 12.05(C). According to the Regulations, a claimant's condition is medically equivalent to a condition described in one of the listed impairments if "the medical findings are at

least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(b). This means that a claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Foster*, 279 F.3d at 355 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original)). The Regulations further explain that "[m]edical equivalence must be based on medical findings" and that "[a]ny medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(a). Plaintiff has presented no medical findings showing "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22; indeed, the three psychologists seem to agree that Plaintiff is of low intelligence but not mentally retarded. Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments do not equal Listing 12.05(C).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.