NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 05a0171n.06
Filed: March 3, 2005

No. 03-5263

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| ARLIN M. ROBINSON, | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| *Plaintiff-Appellant*, | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| v. | ) | |
| | ) | **OPINION** |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |

Before:  MERRITT and DAUGHTREY, Circuit Judges, and NIXON, District Judge.[*]

**JOHN T. NIXON, District Judge.**  Plaintiff-Appellant Arlin M. Robinson ("Robinson" or "Plaintiff") filed this appeal to review the final order of the district court dismissing his action under 42 U.S.C. §405(g).   Appellant opposes the district court's affirmance of the Commissioner's decision to deny him disability insurance benefits under the Social Security Act ("SSA"),  claiming that: (1) the Appeals Council failed to issue a remand order, thus rendering the subsequent actions at the hearing level of no legal consequence; (2) the Administrative Law Judge ("ALJ") improperly failed to consider Robinson's severe mental impairment in his denial

_____

[*] The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

1

decision; (3) the ALJ failed to complete the required Psychiatric Review Technique Form; and (4) the ALJ improperly rejected the opinions of Robinson's treating physician. For the reasons stated herein, we affirm the decision of the district court upholding the Commissioner's denial of Plaintiff's application for benefits, and accordingly, dismiss the action.

## I. PROCEDURAL BACKGROUND

Robinson filed an application for disability insurance benefits alleging his inability to work since February 15, 1993. After two preliminary denials, Appellant requested a formal hearing. The Administrative Law Judge ("ALJ") conducted the hearing and concluded that Robinson was not disabled under the Social Security Act ("SSA"). Appellant then requested review by the Appeals Council, and the Appeals Council affirmed the decision of the ALJ. Thereafter, Robinson filed his first action in the district court. The district court granted the Commissioner's motion to remand pursuant to sentence four (4) of 42 U.S.C. § 405(g) on January 26, 1998.

The ALJ then conducted a second hearing, apparently without an order or notice from the Appeals Council vacating its January 26, 1996 denial determination and remanding this application back to the SSA hearing level for further proceedings. Based on this hearing, on August 25, 1999, the ALJ again denied Plaintiff's application for benefits. Robinson initially requested review by the Appeals Council again, but ultimately filed a Statement of Exceptions. The Appeals Council declined to entertain any of Plaintiff's exceptions, and affirmed the ALJ's decision. Robinson then filed the underlying action giving rise to this appeal.

## II. FACTUAL BACKGROUND

2

At the time of the Commissioner's final decision, Robinson was forty-two years old. He attended school through the eleventh grade. Robinson formerly worked as a plant worker, line worker, dump truck driver and soft drink salesman. He last worked in 1993, and asserts his disability based upon neck and back injuries sustained on February 15, 1993 while setting up a display of Pepsi cans in a supermarket. Robinson had two prior back surgeries in 1980.

Robinson received medical treatment for this injury primarily from Dr. Samuel King, a family practitioner, beginning on February 19, 1993. Dr. King diagnosed cervical strain and left shoulder girdle sprain, and noted that Robinson had a history of L4-5 degenerative disc disease. Dr. King prescribed an anti-inflammatory and muscle relaxer, and encouraged Robinson to try to be active and to apply heat to the affected areas. Dr. King performed a CAT scan of the neck area C3 to T1 which showed no acute findings. When seen on February 23, 1993 Robinson described persistent symptoms of stiffness and a burning sensation. Dr. King placed Robinson in physical therapy and referred Robinson to Dr. Dempsey, a neurosurgeon. On October 28, 1997, Dr. King assessed chronic mechanical low back pain syndrome with cervical strain, degenerative disc disease, lumbar strain, and left lower radiculopathy with weakness along the extensor halluces longus tendon on the left. In a medical report dated September 30, 1998, Dr. King noted chronic mechanical low back pain syndrome and a non-restorative sleep pattern secondary to pain. Dr. King also added that Robinson's non-restorative sleep pattern was an additional stressor creating pain and limitations. Dr. King noted on that date that Robinson's restrictions were consistent with what he had assessed on March 3, 1998; Dr. King still found Robinson permanently disabled from any and all occupations and concluded that Robinson was not a candidate for any type of rehabilitative training.

3

On August 10, 1993, Dr. Dempsey examined Robinson and reviewed the diagnostic evidence, including an MRI of the cervical spine. Dr. Dempsey reported that the MRI of Robinson's spine ordered by Dr. King revealed some disc derangement and scarring at the post-operative variant at L4-5, but not "significant compression." Dr. Dempsey concluded that Robinson had "multiple disc derangements and that he would not benefit from surgery" at that time. Dr. Dempsey recommended rehabilitation with Dr. Sheng Tchou at the University of Kentucky and suggested that Dr. Tchou be in charge of decisions as to Robinson's limitations, expectations, and recovery plans. Dr. Dempsey did not impose any work-related restrictions and recommended conservative treatment, including therapy.

Dr. Tchou, a physician with the University of Kentucky Rehabilitative Medicine Pain Clinic, examined Plaintiff on October 6, 1993 and reviewed the diagnostic evidence. Dr. Tchou reported a severe degree of muscle spasm appreciated at both sides of the cervical paraspinal region and both sides of the low back paraspinal region. Dr. Tchou also reported bulging at the C3-4 level without nerve root compression, and found that mild degenerative changes were shown by a thoracic spine x-ray. Dr. Tchou categorized Robinson as a Class III pain patient, but did not impose any work-related restrictions. He referred Robinson for physical therapy, acupuncture, nerve root block and relaxation therapy. Dr. Tchou also recommended a dietary consultation aimed at having Robinson lose at least forty pounds in the three months following his consultation.

Dr. Colin Craythrone, an orthopedic surgeon, examined Plaintiff on November 20, 1993. Dr. Craythrone reviewed the diagnostic evidence, including an x-ray of Robinson's cervical spine, a CAT scan of Robinson's cervical spine, and an MRI of Robinson's cervical spine. Dr.

Craythrone observed a strained cervical spine, but did not observe any disc protrusion. Dr. Craythrone opined that Robinson might benefit from rehabilitation, but did not need a full-fledged pain program. Dr. Craythrone did not impose any work-related restrictions.

Dr. Joseph H. Rapier, Jr., another orthopedic surgeon, examined Robinson on August 22, 1994. Dr. Rapier reported that AP and lateral x-rays were taken of the cervical spine, lumbar spine and thoracic spine. He opined that the x-rays showed degenerative changes in all areas, and concluded that there may be evidence of a Laminectomy of L5 S1. Nonetheless, Dr. Rapier noted no definite sensory motor or reflex abnormalities associated with these degenerative changes. Dr. Rapier concluded that Robinson had a total functional impairment of 30% with a 25% functional impairment of his lower back due to loss of motion and the fact that he has had disc surgery and 6% functional impairment of his neck due to loss of motion.

Later, in a deposition for a worker's compensation action, Dr. Rapier opined that Robinson could lift a maximum of twenty pounds and regularly could lift ten pounds, and could bend and squat but on only an occasional basis. When asked if Robinson would have restrictions on how long he could be seated or remain standing at any one time, Dr. Rapier responded "I would probably mark it less than about six. Now that wouldn't be at any one time, that would be a total and I would say probably an hour at any one time." Dr. Rapier was then asked "Would that be standing and sitting?" and responded "Both, yes." Based on his last examination of Robinson, Dr. Rapier opined that Robinson could not work "on an eight hour day consistently."

The record also reflects reports from several consultative examiners. Drs. J. Bradford Block and C. Hernandez, non-examining physicians, reviewed the record and opined that Plaintiff's pain did not reduce his residual functional capacity independently or further than was

5

otherwise noted in the records.  Dr Ali Zadeh also performed a consultative evaluation on March 31, 1998 and opined that Robinson had chronic neck pain and back pain.  Dr. Zadeh opined that Robinson could sit or stand for only one to two hours without interruption, and for up to three to four hours total in an eight-hour work day.

Dr. Eric Johnson, a psychiatrist, performed a psychological evaluation of Robinson and concluded that Robinson had a verbal IQ of eighty-one, a performance IQ of eighty and a full scale IQ of eighty.  These scores signify that Robinson is in the upper part of the Borderline range of intellectual functioning, and place him in the bottom 10% of the general population.

In a post-hearing development, the ALJ requested additional information from Dr. John Tansey, a consultative physician, who provided a medical assessment of Plaintiff's ability to do work.  Among Dr. Tansey's medical findings were a history of low back surgery on two occasions and degenerative disc disease at L4-5.  Dr. Tansey also found that the MRI findings of the cervical and lumbar regions did not reveal any correlative neurologic symptomology of significance. He opined that Robinson could not stand for more than thirty to forty minutes at a time, nor could he walk for more than one hour without pain.  Dr. Tansey also opined that Robinson would be able to sit for up to six to eight hours in an eight-hour work day, without interruption.  The ALJ sent Plaintiff notice on January 4, 1999 that information had been gathered from Dr. Tansey, and of the ALJ's intent to include such information in the record.

By letter dated May 18, 1999, the ALJ gave Plaintiff notice that he proposed to enter more additional evidence, secured after the date of the last hearing, into the record in the form of an orthopedic examination conducted by Dr. Kip Beard.  Robinson's attorney requested a copy of Dr. Beard's curriculam vitae, but the record does not reflect any response to his request.  Dr.

6

Beard completed his examination of Plaintiff on April 19, 1999, and based upon the examination and a review of laboratory studies, concluded that Plaintiff suffered from chronic low back and neck pain, brought on by prior back surgeries, a history of degenerative disc disease, and acute and chronic cervical strain. Dr. Beard found range of motion abnormalities about the cervical spine and lumbosacral spine, diminished deep tendon reflexes for both Achilles, nonspecific sensory discrepancies in the left lower extremity, and diminished grip strength on the left. Dr. Beard concluded that Robinson's ability to do work-related activities, such as prolonged carrying, and repetitive bending and stooping, may be limited. In an evaluation form, Dr. Beard opined that Robinson could sit for a total of four to five hours in an eight-hour day and could stand or walk for a total of 3-4 hours in an eight-hour day. He further opined that Robinson could stand for one and one-half hours and sit without interruption for two to two and one-half hours.

Dr. King was deposed on June 14, 1999 for the purpose of submitting a supplemental report in response to the ALJ's decision to include Dr. Beard's consultative examination in the record. Dr. King relied upon his earlier treatment notes and testified to the medical opinions that he had then drawn. Again, Dr. King noted that he had assessed Robinson as suffering from chronic mechanical pain syndrome cervical strain, degenerative disc disease, lumbar strain, left lower radiculopathy with weakness along the extensor halluces longus tendon on the left, and a non-restorative sleep pattern. Dr. King testified that for Robinson to sit for extended periods in the day would cause muscle spasms and further pain. Regarding his assessment of Robinson's non-restorative sleep pattern, Dr. King explained that when individuals cannot sleep they do not achieve a stage IV restorative sleep pattern, where physical relaxation and daily physical repair

work take place.  Dr. King asserted that this created more pain and spasms for Robinson.    When Dr. King's limitations were incorporated into the ALJ's hypothetical to the vocational expert, the vocational expert opined that Plaintiff could not perform competitive work.

III.  ANALYSIS

A.  Standard of Review

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive provided they are supported by substantial evidence. Our review "is limited to determining whether there is substantial evidence in the record to support the findings." *Duncan v. Secretary of Health & Human Servs.,* 801 F.2d 847, 851 (6th Cir. 1986). "'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kirk v. Secretary of Health & Human Servs.,* 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). We are to defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). We must not endeavor to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony, but instead, must decide only whether substantial evidence supports the Commissioner's decision finding Robinson not disabled and therefore ineligible for disability benefits.  *See Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir. 1987) (per curiam).

B.  Plaintiff's Procedural Claims

With respect to procedural claims, Robinson argues that the Appeals Council did not issue a remand order following the district court's remand of January 26, 1998 and that, without such an order, a jurisdictional defect arises which renders the ALJ's second decision a nullity. Second, Robinson contends that the ALJ violated internal procedures and Robinson's due process rights when he obtained additional post-hearing information from Dr. Tansey and Dr. Beard without prior notice to Plaintiff.  Third, Plaintiff argues that the ALJ did not complete a Psychiatric Review Technique Form ("PRTF") in violation of SSA rules.

The Commissioner argues that Plaintiff's procedural claims regarding the absence of a Remand Order, the failure of the ALJ to complete a PTRF, and the ALJ's decision to include in the record the post-hearing consultation of Dr. Beard, were not presented to the district court and have been waived for appeal purposes.   These claims are based upon circumstances known to the Plaintiff during the time of the district court proceedings.  Having had knowledge of the circumstances underlying these claims, Plaintiff should have presented them to the district court. Because Plaintiff did not present these issues to the district court, and because Plaintiff has not presented exceptional circumstances why we should allow such claims to be asserted for the first time here, we could find that Plaintiff has waived these issues. *Taft Broad Co. v. United States*, 929 F.2d 240, 243-245 (6th Cir. 1991).   However, even when assessed on the merits, we find these claims without merit.

Although the Appeals Council must give notice of its intended actions, *Culberton v. Shalala*, 30 F.3d 934, 937 (8th Cir. 1994), the Commissioner's motion to remand, the district court's Order granting that motion, and the notice of setting of the evidentiary hearing before the

ALJ provided ample notice of the action the Commissioner intended to take. The Appeals Council serves as the Commissioner's designee. Moreover, Plaintiff has not shown any prejudice due to the Appeals Council's alleged failure to provide a notice or order of remand.

As to whether Plaintiff's due process rights were violated when the ALJ twice sought post-hearing assessments in this case after the October 16, 1998 hearing, we acknowledge that due process principles do apply to Social Security proceedings. *Perales v. Richardson*, 402 U.S. 389, 401-02 (1971). The Commissioner has a procedural manual referred to as the "HALLEX" that sets forth safeguards and procedures for these administrative proceedings. In one decision, we have found the HALLEX to provide due process. *Adams v. Massanari*, 55 Fed. Appx. 279, 2003 EL 173011 at **4-8 (6th Cir. Jan. 23, 2003). The HALLEX allows for post-hearing consultation proceedings referred by the ALJ, subject to the right of a party to submit interrogatories to the consultant (See Appellant's Brief, Appendix "B" ). Robinson does not contest that he was afforded the opportunity to submit questions to Dr. Tansey, after the ALJ sent him a letter dated January 4, 1999 providing notice of the additional information he had secured from Dr. Tansey. The ALJ again sent Plaintiff's counsel a letter on May 18, 1999, providing notice that he had secured additional information from Dr. Beard, and affording Plaintiff the opportunity to respond. On this occasion, Plaintiff's counsel submitted a supplemental deposition from Dr. King and made a request for Dr. Beard's curriculam vitae. Thus, in line with protections afforded by due process, Robinson had notice of and an opportunity to respond to Dr. Beard's report, as well. We do not discern any reversible error.

The ALJ's failure to complete a Psychiatric Review Technique Form can constitute reversible error, *Montgomery v. Shalala*, 30 F. 3d 98, 100-01 (8th Cir. 1994), but in the Sixth

Circuit, reversal is warranted only if the plaintiff shows "significant evidence of a possible impairment that allegedly prevented the Plaintiff from working." *Marcum v. Commissioner, SSA*, 205 F.3d 1341m 2000WL92262 at *4 (6th Cir. Jan. 18, 2000) (citations omitted). To qualify as exhibiting a severe mental impairment, Plaintiff must prove an issue or IQ of sixty to seventy, coupled with physical or other mental limitations. *Daniels v. Commissioner of Social Security*, 2003 WL 21774004 at *4, n. 1 (6th Cir. 2003). Robinson's IQ is 80 and he does have a work history. Thus, there is no reversible error on this point.

C. Plaintiff's Substantive Claims

As to Robinson's substantive claims, Plaintiff contends that the ALJ improperly rejected the medical opinion and limitations set forth by Dr. King, Robinson's treating physician. Robinson argues that the ALJ erred in relying upon the assessment of Dr. Rapier who completed his independent medical evaluation on August 22, 1994, and on one-time consultative examiners Drs. Zadeh, and Beard. The ALJ concluded that Dr. King's findings were inconsistent with those of the consultative examiners in that Dr. King opined that Robinson was limited to the sedentary range of exertion, while Drs. Zadeh and Beard found milder limitations, suggesting an ability to perform medium exertion. The ALJ also concluded that Dr. King had taken undue consideration of Robinson's sleep problems in assessing that Robinson's non-restorative sleep pattern was causing him additional pain. Finally, the ALJ found that Dr. King's finding of radiculopathy was inconsistent with the reports of the other doctors.

Accordingly, the ALJ rejected Dr. King's assessment of Robinson's impairments, and instead relied upon Dr. Rapier's assessment of Plaintiff's abilities. The ALJ asked the vocational

11

expert ("VE") whether a person with Plaintiff's age, education, and work experience could perform any jobs if he were limited to light exertion, and had the following non-exertional impairments: is limited to lifting twenty pounds occasionally, ten pounds frequently; has the ability to sit or stand for no more than one hour at a time, but less than six hours out of an eight-hour day; can never climb a ladder, rope, or scaffold; can occasionally climb, balance, stoop, crouch, crawl, or kneel; can do no over-the-shoulder lifting and has limited ability to push and pull with his upper extremities; must avoid unprotected heights, moving machinery, and vibratory tools; and may not engage in forward twisting and turning at the waist. The VE found that there were a significant number of jobs available in the regional and national economy that a person with the aforementioned limitations could perform.

In Dr. King's October 9, 1998 assessment of Robinson's physical ability to do work-related activities, he opined that Robinson could stand and walk a total of less than three hours in an eight-hour workday, and only thirty minutes without interruption. Dr. King also assessed that Robinson could spend less than three hours of an eight-hour workday sitting, and that he could sit for only thirty minutes without interruption. When asked, the VE concluded that an individual with the limitations presented by Dr. King could not be competitively employed in any job.

Robinson makes several arguments against the ALJ's reliance on Dr. Rapier's assessment of Robinson's ability to engage in work-related activities. First, Plaintiff argued below that Dr. Rapier's testimony regarding Robinson's sitting and standing restrictions were ambiguous. Plaintiff argued to the district court that the doctor was really indicating that Robinson could not stand or sit for more than six hours total in an eight-hour day, rather than the ALJ's

12

interpretation of six hours standing and six hours sitting.  The District Court concluded that Dr. Rapier's statement could be interpreted in more than one way, and that if there was error in the ALJ's interpretation, then it was harmless because the ALJ could have relied on Dr. Tansey's opinion that Plaintiff was capable of sedentary lifting and sitting for up to eight hours a day, with non-exertional restrictions consistent with the hypothetical question posed to the VE.

On appeal, Plaintiff asserts that the district court's finding that any error, if it existed, was harmless is incorrect because Dr. Tansey's review was secured in violation of Robinson's due process rights.  We concluded above that Plaintiff was given notice each time the ALJ sought to include additional post-hearing evidence into the record, and was also given an opportunity to respond on both occasions.  As we opined that there was no reversible error in the ALJ's securing post-hearing information for Drs. Tansey and Beard, we now find Plaintiff's argument without merit.  Dr. Tansey assessed that "prolonged standing for more than 30-40 minutes or walking more than one hour would be painful" but found that Robinson could sit for between six and eight hours total in an eight-hour workday, and up to eight hours without interruption.  Thus, the ALJ's finding that Robinson's limitations were less severe than reported by Dr. King is supported by substantial evidence in the record.

Plaintiff also asserts that Dr. King's opinion is consistent with the opinions of other doctors who are specialists, and should have been accorded deference.  The opinions of treating physicians are accorded great weight if supported by sufficient clinical findings.  *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994); 20 C.F.R. § 404.1527(d)(2).  A treating physician's opinion may be rejected if that opinion is unsupportable or contrary to objective medical evidence.  More weight is generally given to a specialist whose opinion is within his or

13

her specialty, as compared to the opinion of a physician who is not a specialist. 20 C.F.R. § 404.1527(d)(5).

None of the consultative examiners found any evidence of nerve root impingement, which was the primary factor that Dr. King gave to support his assessment. There was also a lack of evidence of significant nerve root compression or radiculopathy in Dr. Dempsey's treatment records. Dr. Tchou's records reflect that the MRI of Robinson's cervical spine showed no evidence of nerve root compression, nor did the other test reveal evidence of lumbar radiculopathy or lower extremity neuropathy. Dr. Tansey also concluded that "the electrodiagnostic studies reveal no evidence of a lumbar radiculopathy or lower left leg neuropathy." Additionally, Dr. Tansey reported bulging at the C3-C4 level *without* nerve root compression. Thus, there is substantial evidence in the record to support the ALJ's determination that Dr. King's assessment was inconsistent with the record. We find no error, therefore, in the decision not to accord special deference to his opinion.

While there are limitations on Plaintiff's ability to move, Drs. Dempsey, Tchou, Block, and Beard did not impose any work restrictions. The VE considered Plaintiff's past relevant work as a route salesman to be semi-skilled work. Plaintiff's borderline intelligence did not interfere with his ability to perform previous jobs. Thus, under *Daniels*, Plaintiff's proof of performing in the borderline range of intellectual functioning does not rise to the level of a serious mental impairment. Thus, the ALJ could reasonably conclude that Plaintiff could perform some sedentary work.

IV. CONCLUSION

14

Because we find that the Commissioner's findings are based upon substantial evidence in the record, the district court's opinion upholding the Commissioner's decision to deny Robinson disability insurance benefits under the Social Security Act should be AFFIRMED.